THE LAW OFFICES OF
# JULIE R. ULMET

September 21, 2023

**By ECF and Email (Torres_NYSDChambers@nysd.uscourts.gov)**
The Honorable Analisa Torres
United States District Court for the Southern District Of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

    Re: *Anna Netrebko v. Metropolitan Opera Association, Inc., et al.*
       Case No. 23-cv-6857

Dear Judge Torres,

  Pursuant to Rule III.A.2. of this Court's Individual Practices, Plaintiff Anna Netrebko respectfully submits this Opposition to Defendants' September 14, 2023 Pre-Motion Letter (hereinafter, the "Pre-Motion Letter"). Ms. Netrebko respectfully maintains that controlling authority supports the Amended Complaint (Docket No. 9; hereinafter the "Complaint"), for the reasons set forth in this letter, and which can be more fully discussed in her opposition briefing.

  **1. Preclusive Effect of Prior Labor Arbitration**

  Defendants suggest that each of Ms. Netrebko's causes of action is precluded by a prior arbitration concerning violations of the collective-bargaining agreement (the "CBA") between Defendant the Metropolitan Opera Association, Inc. (the "Met") and non-party the American Guild of Musical Artists ("AGMA"), the labor union representing Ms. Netrebko. However, Ms. Netrebko does not seek to re-litigate grievances that were already decided by the arbitrator. Instead, the discrimination, defamation, and breach of contract claims in this case were not presented to or not decided by the arbitrator and are proper for resolution by this Court.

  First, as to the discrimination claims, AGMA did not present any discrimination-related grievances in the arbitration, and courts in this Circuit have held that a prior labor arbitration does not preclude an employee from subsequently bringing statutory discrimination claims. As one court explained, "if the Union declines to arbitrate a claim of discrimination under Title VII, the CBA's mandatory arbitration provision, if construed expansively to cover individual employee claims, would deprive those employees from vindicating their statutory rights in *any* forum. Ample precedent makes clear that this is an unacceptable result." *Espada v. Guardian Serv. Indus., Inc*., No. 18CV5443ILGJO, 2019 WL 5309963, at *5 (E.D.N.Y. Oct. 18, 2019) (italics in original). *See also Kravar v. Triangle Servs., Inc*., No. 1:06-CV-07858-RJH, 2009 WL 1392595, at *3 (S.D.N.Y. May 19, 2009) (because the union "prevented [plaintiff] from arbitrating her disability discrimination claims, the CBA's arbitration provision may not be enforced as to her.") The same principle applies to state and local human rights laws.



Second, as to Ms. Netrebko's defamation claims, such claims were not and could not have been brought by AGMA in arbitration as they are not cognizable under the CBA and thus Ms. Netrebko's claims cannot be precluded here. Any incidental remarks by the arbitrator about Ms. Netrebko's supposed support for Putin may not be given preclusive effect since they do not relate to matters decided by the arbitrator or necessary to the arbitrator's determinations.

Finally, as to the breach of contract claim, the arbitrator found that his authority only allowed him to consider whether the Met's actions violated the terms of the CBA and not whether the Met's actions separately violated New York contract law. *See* Complaint, ¶ 66-67 (quoting arbitrator's award stating that AGMA argued that the "holds" were "binding contracts under New York law" but the "issue here is not whether the communications . . constitute binding contracts. Rather, the issue is whether holds . . . are enforceable under the terms of the Collective Bargaining Agreement and the parties' practice.") Thus, the state law contract issue was reserved for consideration by a court with authority to consider state law arguments and is therefore properly before this Court.

## 2. Discrimination

Defendants' arguments about supposed deficiencies in the Complaint's discrimination claims are without merit. Defendants' assertion that their actions were motivated by Ms. Netrebko's political views rather than her national origin is belied by the detailed allegations in the Complaint that Defendants terminated the Met's relationship with Ms. Netrebko because she was a prominent female Russian artist. The Complaint alleges in detail six different categories of evidence which demonstrate discrimination on the basis of national origin and/or intersectional national origin and gender: (1) the Met's February 27 Policy was facially discriminatory against Russian artists (Compl., ¶ 42-47); (2) the Met's stated reasons for its adverse actions against Ms. Netrebko were pretextual because they were false (Compl., ¶ 49, 58, 59); (3) the Met replaced Ms. Netrebko with non-Russian artists and used this fact to garner publicity (Compl. ¶ 50(a)-50(d)); (4) the Met did not evenly apply the February 27 Policy to other artists (Compl. ¶ 51); (5) the Met did not ask other artists to make similar statements repudiating the Russian government and made demands of Ms. Netrebko that were impossible for her to comply with (Compl., ¶ 52(a)-52(l)); and (6) the Met did not take similar adverse actions against male Russian artists who had reportedly received support from, or expressed support for, Putin or the Russian government (Compl., ¶ 53-54).

As the Second Circuit has explained in the context of a motion for summary judgment, thus enunciating a principle that applies even more forcefully on a motion to dismiss, "[n]o one piece of evidence need be sufficient, standing alone, to permit a rational finder of fact to infer that defendant's employment decision was more likely than not motivated in part by discrimination. To use the apt metaphor . . . a plaintiff may satisfy her burden by building a wall

2



out of individual evidentiary bricks." *Walsh v. New York City Hous. Auth.*, 828 F.3d 70, 76 (2d Cir. 2016).

As to specific pieces of evidence with which Defendants take issue, first, Ms. Netrebko has satisfied her pleading obligations as to comparator evidence. Recent amendments to the state Human Rights Law make explicit that a plaintiff is not required to plead comparators: "Nothing in this section shall imply that an employee must demonstrate the existence of an individual to whom the employee's treatment must be compared." N.Y. Exec. L. § 296(1)(h). In any event, the allegations in paragraphs 51, 53, and 54 are sufficient to meet her burden for pleading comparator evidence as they concern "information particularly within [Defendants'] knowledge and control. Pleading on the basis of information and belief is generally appropriate under such circumstances." *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008) (Sotomayor, J.).

Next, it is unclear precisely what Defendants intend to argue as to Ms. Netrebko's gender discrimination claims, especially because Ms. Netrebko does not allege a stand-alone gender discrimination claim but only an intersectional national-origin-plus-gender claim. That she was replaced by other (non-Russian) women in female soprano roles is of no moment. The Second Circuit has explained, "a plaintiff's discrimination claims may not be defeated . . . based merely on the fact that certain members of a protected class are not subject to discrimination, while another subset is discriminated against based on a protected characteristic shared by both subsets." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 109 (2d Cir. 2010). The Complaint properly pleads an intersectional claim, specifically alleging, *inter alia*, that in these roles Ms. Netrebko was replaced by *non*-Russian women (Compl. ¶ 50(a)-50(d)) and that the Met did not take adverse actions against similarly situated *male* Russian artists (Compl. ¶ 53-54).

### 3. Defamation

Defendants' arguments about the defamation claims are similarly meritless. First, two of their asserted defenses are mutually exclusive: they claim *both* that the defamatory statements are "substantially true" *and* that they are statements of opinion. However, a statement of opinion is one that it is not "capable of being objectively characterized as true or false." *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 292 (1986). Thus, the statements cannot be *both* "substantially true" and statements of opinion. In any event, the Complaint alleges that Gelb made defamatory statements that were statements of fact and were false. *See* Complaint, ¶ 56(e)-(j) (setting forth statements); 58(a)-58(e) and 59(a)-59(l) (alleging falsity).

The cases which Defendant cites for the "substantially true" proposition are mischaracterized. In *Vetere*, the court found the statement that plaintiff was "a former member of the American Nazi Party" "substantially true" where he had been a "probationary member" of the renamed successor organization to the American Nazi Party. *Vetere v. Associated Press*, No. 88 CIV. 4115, 1989 WL 39664 (S.D.N.Y., August 12, 2022). Cases finding that calling someone



a "Nazi" was opinion dealt with using that term as a slur or insult, not a statement of political affiliation. *See*, *e.g.*, *Morgan v. NYP Holdings, Inc.*, 58 Misc. 3d 1203(A), 93 N.Y.S.3d 627 (N.Y. Sup. Ct. 2017) (complaining that a school sports administrator was "like a Nazi" for scheduling games on Yom Kippur was opinion as it was "hyperbolic and incapable of being proven true or false"). Here, the Complaint sets forth in detail the ways that the defamatory statements are demonstrably false. Complaint, ¶ 58(a)-58(e); 59(a)-59(l).

The Complaint adequately alleges actual malice, alleging that Gelb knew that his statements were false or acted with "reckless disregard of the truth." *Gertz v. Robert Welch*, Inc., 418 U.S. 323, 332 (1974). The detailed allegations in the Complaint are more than sufficient to satisfy Ms. Netrebko's pleading burden since the question of whether a defendant "in fact entertained serious doubts as to the truth of the statement may be proved by inference," based on "evidence of negligence, motive, and intent such that an accumulation of the evidence and appropriate inferences supports the existence of actual malice." *Bose Corp. v. Consumers Union*, 692 F.2d 189, 196 (1st Cir. 1982), aff'd, 466 U.S. 485 (1984). Here, detailed allegations demonstrate that Gelb spoke with actual malice based on his knowledge of falsity, reckless disregard for the truth, and motivation to defame Ms. Netrebko. Complaint, ¶ 59(a)-59(l), 60.

4. **Breach of Contract**

Defendants' reference to Section 301 preemption is inapposite as Ms. Netrebko's claims do not require interpretation or enforcement of a collective-bargaining agreement. In fact, the case cited by Defendants relates to an action by employees against their union and has no bearing on this case by an independent contractor against an employer. Defendants' assertion that the breach of contract claim turns on "an issue between the collective bargaining parties" is incorrect: the labor arbitrator already determined that the "holds" at issue here were not covered by the CBA.

Notably, Defendants do not appear to make any arguments on the merits of the breach of contract claim, only about whether the Court can reach the merits. The breach of contract question is properly before the Court and the allegations and evidence demonstrate that the Met breached those agreements.

\*   \*   \*

In conclusion, Defendants' anticipated arguments in their motion to dismiss are without merit and Ms. Netrebko welcomes the opportunity to present her opposition in detail in the full exchange of briefing.



                    Sincerely,

                    */s/ Julie R. Ulmet*

                    Julie R. Ulmet
                    *Counsel for Plaintiff*

cc:    Lloyd B. Chinn, Esq. and Howard Z. Robbins, Esq.,
       *Counsel for Defendants* (By Email and ECF)