**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------ X

| | | |
|---|---|---|
| ANNA NETREBKO, | : | Case No. 23-cv-6857-AT |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| METROPOLITAN OPERA ASSOCIATION, INC. d/b/a THE METROPOLITAN OPERA and PETER GELB, in his professional and individual capacities, | : : : | |
| Defendants. | X | |

**PLAINTIFF ANNA NETREBKO'S MOTION FOR RECONSIDERATION**
**OF THE COURT'S AUGUST 22, 2024 ORDER OR, IN THE ALTERNATIVE,**
**CERTIFICATION OF AN INTERLOCUTORY APPEAL OR ENTRY OF FINAL**
<u>**JUDGMENT ON THE DISMISSED CLAIMS UNDER RULE 54(b)**</u>

Julie R. Ulmet
THE LAW OFFICES OF JULIE R. ULMET
417 Grand St., #1804
New York, NY 10002
Tel (646) 396-0055
Fax (646) 340-1022
julie@ulmetlaw.com
*Counsel for Plaintiff Anna Netrebko*

1

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 2

I.      RECONSIDERATION OF THE AUGUST 22 ORDER IS WARRANTED ................... 2

    A.     Legal Standard ......................................................................................................... 2

    B.     The Court Erred in Considering the Arbitrator's Award and News Articles for the Truth of Matters Asserted Therein ........................................................................................ 2

    C.     The Court Applied the Incorrect Legal Standard in Considering NYSHRL and NYCHRL Claims on a Motion to Dismiss ................................................................. 4

    D.     The Court Applied the Incorrect Legal Standard for Pleading Actual Malice at the Motion to Dismiss Stage ........................................................................................... 8

    E.     Netrebko's State Law Breach of Contract Claim is Not Precluded .............................. 12

II.     IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY PORTIONS OF ITS ORDER FOR AN INTERLOCUTORY APPEAL OR ENTER FINAL JUDGMENT ON THE DISMISSED CLAIMS UNDER RULE 54(b) ............................................................... 13

CONCLUSION ............................................................................................................................ 16

## **TABLE OF AUTHORITIES**

**Cases**

*Bautista v. PR Gramercy Square Condo.*, 642 F. Supp. 3d 411 (S.D.N.Y. 2022) ................. 8,9

*Bethea v. Winfield Sec. Corp.*, No. 23 Civ. 922 (AT), 2024 U.S. Dist. LEXIS 95467 (S.D.N.Y. May 29, 2024) ....................................................................................................................... 4

*Biro v. Condé Nast*, 807 F.3d 541 (2d Cir. 2015) ................................................................... 11

*Brimelow v. N.Y. Times Co.*, No. 21-66-cv, 2021 U.S. App. LEXIS 31672 (2d Cir. Oct. 21, 2021) ................................................................................................................................ 10,11

*Doe v. Columbia Univ.*, 831 F.3d 46, at 56 n.10 (2d Cir. 2016) ............................................. 6, 7

*Fairstein v. Netflix, Inc.*, 553 F. Supp. 3d 48 (S.D.N.Y. 2021) ............................................... 10

*Franklin v. Whole Foods Mkt. Grp., Inc.*,
    No. 20-CV-4935 (VEC), 2022 U.S. Dist. LEXIS 14594 (S.D.N.Y. Jan. 26, 2022) ........... 6

*Garrison v. Louisiana*, 379 U.S. 64 (1964) .............................................................................. 10

*Giles v. City of N.Y.*, 41 F. Supp. 2d 308 (S.D.N.Y. 1999) ........................................................ 5

*Ginett v. Computer Task Force*, 962 F.2d 1085 (2d Cir. 1992) ............................................... 16

*Glob. Network Communs., Inc. v. City of N.Y.*, 458 F.3d 150 (2d Cir. 2006) ........................... 5

*Goel v. Bunge, Ltd.*, 820 F.3d 554 (2d Cir. 2016) ..................................................................... 5

*Henneberger v. Cnty. of Nassau*, 465 F. Supp. 2d 176 (E.D.N.Y. 2006) ................................. 5

*In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 1997 U.S. Dist. LEXIS 11937 (S.D.N.Y. Aug. 12, 1997) ................................................................................................... 13

*Kipper v. NYP Holdings Co.*, 12 N.Y.3d 348 (2009 ................................................................ 10

*Levy v. Legal Aid Soc'y*, 408 F. Supp. 3d 209 (E.D.N.Y. 2019) ............................................... 6

*Littlejohn v. City of N.Y.*, 795 F.3d 297 (2d Cir. 2015), 795 F.3d ........................................ 5, 8

*McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174 (S.D.N.Y. 2020) ...................... 11

*Menaker v. Hofstra Univ.*, 935 F.3d 20 (2d Cir. 2019) ............................................................. 7

*Merritt v. Shuttle, Inc.*, 13 F. Supp. 2d 371 (E.D.N.Y. 1998) ................................................... 5

*Palin v. N.Y. Times Co.*, 940 F.3d 804 (2d Cir. 2019) ............................................................ 10

*Palin v. N.Y. Times Co.*, No. 22-558, 2024 U.S. App. LEXIS 21801 (2d Cir. Aug. 28, 2024) ... 10,11

*Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343 (1999) ............................................... 12

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007) ....................................................................... 10

ii

*SEC v. Rio Tinto PLC*, No. 17 Civ. 7994, 2021 U.S. Dist. LEXIS 89848 (S.D.N.Y., May 11, 2021) ................................................................................................................................ 13

*Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406 (2d Cir. 2008) ........................................... 5

*Supercom, LTD v. Sabby Volatility Warrant Master Fund LTD*, No. 21 Civ. 2857 (AT), 2023 U.S. Dist. LEXIS 101681 (S.D.N.Y. Mar. 15, 2023) ............................................................... 4

**Rules and Statutes**

28 U.S.C. § 1291 ............................................................................................................... 16

28 U.S.C. § 1292 ........................................................................................................ 3,13,16

Federal Rule of Civil Procedure 54 ................................................................................. 3,15

Federal Rule of Civil Procedure 50 ............................................................................... 11,15

Federal Rule of Civil Procedure 54 ............................................................................1, 13, 16

Federal Rule of Civil Procedure 59 ..................................................................................... 4

**INTRODUCTION**

On August 22, 2024, this Court issued an Opinion and Order (the "August 22 Order") granting in part and denying in part the Motion of Defendants Metropolitan Opera Association, Inc. (the "Met") and Peter Gelb ("Gelb"; collectively with the Met, "Defendants") to Dismiss the Complaint. (ECF Doc. 64). The August 22 Order held that Plaintiff Anna Netrebko ("Netrebko") had adequately alleged a claim for gender discrimination under the New York City and New York State Human Rights Laws ("NYCHRL" and "NYSHRL," respectively) and permitted the case to proceed against both the Met and Gelb on that basis. However, the Court found that Netrebko failed to adequately allege national origin discrimination, defamation, and breach of contract, and granted Defendants' motion to dismiss as to those claims.

Netrebko respectfully requests that the Court reconsider its rulings on national origin discrimination, defamation, and breach of contract. Netrebko respectfully avers that the Court erred in (1) considering a prior labor arbitration award and a news article for the truth of the matters asserted therein; (2) applying the incorrect legal standard in considering NYCHRL and NYSHRL claims at the pleadings stage; (3) applying the incorrect legal standard in considering whether actual malice was properly alleged at the pleadings stage; and (4) failing to consider the labor arbitrator's statement that he lacked authority to consider state law breach of contract claims.

In the alternative, Netrebko respectfully requests that the Court certify for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) those portions of its August 22 Order dismissing Netrebko's claims for national origin discrimination, defamation, and breach of contract, or in the alternative, that the Court find that there is no just cause for delay and direct that a final judgment be entered on the dismissed claims under Federal Rule of Civil Procedure 54(b) so that Netrebko may appeal from that judgment.

1

## ARGUMENT

I. **RECONSIDERATION OF THE AUGUST 22 ORDER IS WARRANTED**

   A. **Legal Standard**

A motion for reconsideration is appropriate where the movant demonstrates "that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion" and which "might reasonably be expected to alter the Court's decision." *Bethea v. Winfield Sec. Corp.*, No. 23 Civ. 922 (AT), 2024 U.S. Dist. LEXIS 95467, at *2 (S.D.N.Y. May 29, 2024) (Torres, J.) (internal citations and alterations omitted). Reconsideration is also appropriate under the grounds referenced in Rule 59(e) where: "(1) there is an intervening change in controlling law; (2) new evidence previously unavailable comes to light; or (3) it is necessary to remedy clear error of law or to prevent manifest injustice." See, e.g., Supercom, LTD v. Sabby Volatility Warrant Master Fund LTD, No. 21 Civ. 2857 (AT), 2023 U.S. Dist. LEXIS 101681, at *1-2 (S.D.N.Y. Mar. 15, 2023) (Torres, J.) (citing Fed. R. Civ. P. 59(e)).

   B. **The Court Erred in Considering the Arbitrator's Award and News Articles for the Truth of Matters Asserted Therein**

Reconsideration is warranted because the August 22 Order improperly relied on factual assertions in two documents that may not be considered for the truth of the matters asserted therein on a motion to dismiss: (1) the arbitrator's award in a prior labor arbitration; and (2) a New York Times article, just three words of which were cited in the Complaint.[1] (ECF No. 64, p. 3-4, n.2). Netrebko vigorously disputes these factual assertions, which improperly repeat language concerning Netrebko's ties to the Russian government nearly identical to defamatory statements at issue in this case, and she should have the opportunity to fully litigate these issues in this action.

---

[1] Javier C. Hernández, "The Netrebko Question," N.Y. Times (June 22, 2022), https://www.nytimes.com/2022/06/22/arts/music/anna-netrebko-opera-putin-russia.html (cited in ECF Doc. 27, ¶ 2).

2

As to the arbitrator's decision, the Second Circuit has clearly explained that a court may consider documents from a separate legal action, but "it may do so on a motion to dismiss only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion." *Glob. Network Communs., Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006) (internal citation omitted). As to a prior labor arbitration, a court may properly consider "the information contained in the Arbitrator's decision not for its truth but to establish the fact of the arbitration proceeding." *Henneberger v. Cnty. of Nassau*, 465 F. Supp. 2d 176, 185 (E.D.N.Y. 2006) (internal citation omitted). Instead, the question of whether to rely on the findings of a prior arbitration depends on a preclusion analysis. Where preclusion does not apply, "a post-arbitration proceeding is not 'bound by the arbitrator's factual conclusions.'" *Giles v. City of N.Y.*, 41 F. Supp. 2d 308, 313 (S.D.N.Y. 1999) (citing *United States v. Int'l Bhd. of Teamsters*, 954 F.2d 801, 809-810 (2d Cir. 1992)).[2]

The Court correctly held that no preclusion applied to Netrebko's discrimination claims. The Court implied that there was no preclusion as to the defamation claim but did not explicitly consider the issue. As Plaintiff explained in her brief on the underlying motion, Netrebko's relationship with the Putin government was not "actually litigated and decided" and was not "necessary" to the Arbitrator's decision. (ECF Doc. 42, p. 29-31). Indeed, the Union explicitly stated that its position in the labor arbitration: "For purposes of resolving this grievance, the Arbitrator need not determine the truth or falsity of any allegations regarding Netrebko's political beliefs," and thus the Union did not litigate that issue. (ECF Doc. 43-3, p. 2 n.1). (*See also* ECF Doc. 42, p. 31 (explaining why Netrebko's political views were not necessary to the Arbitrator's decision)). *See also Merritt v. Shuttle, Inc.*, 13

---

[2] In addition to being legally incorrect, the August 22 Order is factually incorrect in stating that the Arbitrator's Award is "mentioned throughout the SAC and central to the facts at issue." In fact, the Arbitrator's Award is mentioned as background in just four consecutive paragraphs of a 142-paragraph complaint.

3

F. Supp. 2d 371, 385 (E.D.N.Y. 1998) (in post-arbitration defamation proceeding, "Plaintiff is not collaterally estopped from arguing that [employer's] alleged defamatory statement is false" unless the employer can show that "there was no other rational ground upon which the [prior] judgment was based than the issue which it *See*ks to preclude in the present litigation."). Thus, the August 22 Order's lengthy recitation of facts taken from the Arbitrator's decision was an error of law. (ECF Doc. 64, p. 3, 4).

Second, the August 22 Order quotes at length from a news article about Netrebko. But the news article's factual assertions are not facts which can be taken as true on a motion to dismiss, even if the news article was briefly cited in the Complaint. "Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering limited quotations from the document is not enough." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (internal quotation and alteration omitted) (noting that this limited exception typically applies where "the incorporated material is a contract or other legal document," and overturning district court's decision based on improper reliance on deposition testimony from another proceeding). As to press coverage in particular, "it is proper to take judicial notice of the fact that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents." *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008). Here, Netrebko quoted just three words from the article. Thus, the August 22 Order's lengthy recitation of facts taken from this article was an error of law. (ECF Doc. 64, p. 3-4).

Because the national origin discrimination and defamation claims improperly considered these factual assertions, reconsideration of those holdings is warranted, as further discussed below.

C. **The Court Applied the Incorrect Legal Standard in Considering NYSHRL and NYCHRL Claims on a Motion to Dismiss**

The Court held that Netrebko failed to adequately plead an allegation of national origin

4

discrimination, finding that the Met's stated reason for Netrebko's termination was "a belief held in good faith" and finding that Netrebko failed to adequately allege similarly situated comparators, and ultimately concluding that the Met's discharge may have reflected "unfair dislike" but "does not sufficiently implicate her national origin to permit an inference of discrimination." (ECF Doc. 64, ¶ 15.)

First, the Court erred in considering whether the Met's stated reason was "in good faith" because an employer's "alleged legitimate reasons for the adverse employment action cannot be considered on a motion to dismiss." *Franklin v. Whole Foods Mkt. Grp., Inc.*, No. 20-CV-4935 (VEC), 2022 U.S. Dist. LEXIS 14594, at *14-15 (S.D.N.Y. Jan. 26, 2022) (citing *Littlejohn v. City of N.Y.*, 795 F.3d 297 (2d Cir. 2015)). Indeed, "any inquiry into any non-discriminatory reasons for a defendant's conduct is reserved for summary judgment or trial." *Levy v. Legal Aid Soc'y*, 408 F. Supp. 3d 209, 216 (E.D.N.Y. 2019). Further, "[i]t is not the court's function in ruling on a motion to dismiss for insufficiency of the complaint to decide which was the defendant's true motivation." *Franklin*, 2022 U.S. Dist. LEXIS 14594, at *15 n.15 (S.D.N.Y. Jan. 26, 2022) (citing *Doe v. Columbia Univ.*, 831 F.3d 46, at 56 n.10 (2d Cir. 2016)).[3]

The Court repeatedly credited Defendants' asserted defense – that Netrebko's termination

---

[3] In contrast, many of the cases cited by the August 22 Order were in the summary judgment posture and therefore their concerns about the sufficiency of the plaintiff's evidence and the employer's motivations are inapplicable here. *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211 (2d Cir. 2006) (considering employer's defense on summary judgment); *Newman v. Montefiore Med. Ctr.*, No. 96 CIV. 2687 (RWS), 1996 WL 741599, at *5 (S.D.N.Y. Dec. 27, 1996) (same). A cited case at the pleadings stage, *Cooper v. Templeton*, 629 F. Supp. 3d 223, 230 (S.D.N.Y. 2022), aff'd sub nom. *Cooper v. Franklin Templeton Invs.*, No. 22-2763-CV, 2023 WL 3882977 (2d Cir. June 8, 2023), dealt with an inapposite set of allegations in which a white employee admitted that he was fired because the employer deemed him "racist," but the court held that being fired for "racism" is not the same as being fired on the basis of race. This is not analogous to the facts here because, first, the Complaint asserts that the Met's stated reason for Netrebko's discharge was pretextual, and second, there is no suggestion that Netrebko was fired for analogous conduct (such as any asserted treatment of Ukrainians).

5

"result[ed] from her support for Putin" – but Netrebko does not concede that this was the real reason for the Met's actions. Instead, the Complaint alleges that this was a *pretext* for the Met's decision to fire her because of her national origin and gender. (*See, e.g.*, ECF Doc. 27, ¶ 48 (alleging stated reason was a pretext), ¶ 49-52 (alleging multiple grounds from which to find pretext)).

The Court's failure to permit the national origin discrimination claim to move forward is all the more errant because the Court recognized the Complaint's detailed allegations relating to the Met's "anti-Russia publicity campaign," of which Netrebko's termination was a part. The Court recognized that "the simultaneity of Netrebko's termination, public outcry over Putin's 2022 invasion, and the Met's efforts to show its pro-Ukraine bona fides" shows that "the Met's 'rapid turnabout on the Russian question'—from being at the Bolshoi one day to firing her a few days later—was part of its 'anti-Russia publicity campaign.'" (ECF Doc. 64, p. 18). The August 22 Order then leap-frogged to the differential treatment alleged between Netrebko and Russian male artists, but the detailed allegations of the "anti-Russia . . . campaign" are also sufficient to establish a prima facie case for national origin discrimination at the pleadings stage. The Second Circuit has specifically held that a claim of discrimination can be supported by "favoring one [group] over the other . . . in order to avoid liability or bad publicity." *Doe*, 831 F.3d at 58 n.11. *See also Menaker v. Hofstra Univ.*, 935 F.3d 20, 33 (2d Cir. 2019) (applying *Doe* to employment discrimination context and reaffirming that employer's adverse actions in response to "press coverage or public pressure . . . will permit a plausible inference of [] discrimination").

Next, the Court erred in improperly conflating comparators and replacements. Allegations of comparators are not required under the law, contrary to the Court's conclusion that the national origin claim fails for the lack of evidence of similarly situated comparators. *See* N.Y. Exec. L. § 296(1)(h) (making explicit that NYSHRL does not require employee to "demonstrate the existence of an

6

individual to whom the employee's treatment must be compared"); Local Civil Rights Restoration Act of 2005 (Local Law No. 85 of City of New York) (incorporating this provision by reference because state law provides a "a floor below which the City's Human Rights law cannot fall").

Instead, Netrebko's allegations about her replacements were not put forth as comparators but because at the motion to dismiss stage, "the mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination." *Littlejohn*, 795 F.3d at 313 n.11. *See also Bautista v. PR Gramercy Square Condo*., 642 F. Supp. 3d 411, 425 (S.D.N.Y. 2022) (finding inference of discrimination sufficient for federal, state, and local human rights claims to survive motion to dismiss where plaintiff alleged that he was replaced by someone outside the protected class).

If "the mere fact" that a replacement is outside the protected class is sufficient to infer discrimination, the fact that the Met replaced Netrebko with a Ukrainian because she was Ukrainian, as the Complaint alleges (ECF Doc. 27, ¶ 50(b)), is more than enough to permit an inference at this stage that Netrebko was fired because she is Russian. In this case, the replacement allegations are not "mere fact[s]" but rather, go hand in hand with the Complaint's central narrative that the Met terminated Netrebko as part of its "anti-Russia publicity campaign" and its effort to "show its pro-Ukraine bona fides" (ECF Doc. 64, p. 18), permitting the Met to generate headlines like one cited in the Complaint: "Dropping Anna Netrebko, the Met Turns to a Ukrainian Diva." (ECF Doc. 27, ¶ 50(b), p.15).

Finally, the Court erred in failing to consider in any way the legal significance of the Met terminating Netrebko for refusing to denounce Putin – even though the Order recited this as the central turn of events in its opening line. Netrebko alleged that the Met told Netrebko that her continued employment was contingent on her issuing a public statement denouncing Putin; Netrebko responded,

7

"as a Russian citizen, she could not make such a statement;" and the Met terminated Netrebko for this refusal. (ECF Doc. 27, ¶ 30, 31, 52(g),(k),(l)). The Complaint further alleges that the Met asked Netrebko to make this statement because of her Russian origin, (*Id.*, ¶ 52(a)-(c)), but at the time of the request, as the Met was aware, denouncing Putin could subject Russians and their families to criminal penalties and other reprisals. (*Id.*, ¶ 45, 52(d)). Under the State and City laws, in which every inference must be made in favor of the employee, these detailed allegations – even if unusual or novel – suffice to allege a prima facie case of national origin discrimination at the pleadings stage. The Complaint alleges that the Met asked Netrebko to take this action because she is Russian, she refused to do so because she is Russian, the Met knew that it was dangerous for Russians to make such statements, and the Met fired her for her refusal because they wanted to generate positive publicity for their anti-Russia campaign by terminating their most prominent Russian artist.[4] (*Id.*, ¶ 52(a)-(l)).

These allegations and the other thirty-four paragraphs and subparagraphs of the Complaint (ECF Doc. 27, ¶ 39-52(l)) describing the basis for Netrebko's national origin discrimination claim provide more than enough "connective tissue" to these allegations that, had the Court considered these factual allegations under the correct legal standard, the national origin discrimination claim would have been permitted to proceed.[5]

### D. The Court Applied the Incorrect Legal Standard for Pleading Actual Malice at the Motion to Dismiss Stage

The Court erroneously held that Netrebko failed to plausibly allege actual malice because she

---

[4] The claim is not undermined by the Met not making the same demand of all Russians: "Discrimination against one employee cannot be cured, or disproven, solely by favorable, or equitable, treatment of other employees of the same race or sex." *Brown v. Henderson*, 257 F.3d 246, 252-53 (2d Cir. 2001) (citing *Connecticut v. Teal*, 457 U.S. 440, 455 (1982) ("Congress never intended to give an employer license to discriminate against some employees . . . merely because he favorably treats other members of the employees' group")).

[5] Because the Court should permit the national origin discrimination claim to proceed, the Court should also permit a claim to proceed for intersectional discrimination based on Netrebko's intertwined identity as a Russian woman.

failed to meet the "high bar" for *proving* actual malice by clear and convincing evidence, but this standard applies at the summary judgment stage of an action (and beyond) and is the incorrect legal standard on a motion to dismiss. (ECF Doc. 64, at 21-22). The Court held that it was not "required" to find in favor of Netrebko based on the allegations stated in the Complaint and went on to draw conclusions about Gelb's "subjective belief" about Netrebko's political views. (ECF Doc. 64, at p. 22). However, the Court is prohibited from making factual findings at the motion to dismiss stage. Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) ("a ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact.") The Second Circuit's intervening decision in *Palin v. N.Y. Times Co.*, No. 22-558, 2024 U.S. App. LEXIS 21801, at *25-26 (2d Cir. Aug. 28, 2024) (hereinafter "*Palin II*"), only serves to reinforce that such findings are erroneous when deciding a Rule 12(b)(6) motion.

Courts have repeatedly held that "actual malice," including subjective state of mind, is not properly determined at the motion to dismiss stage. *See*, *e.g.*, *Fairstein v. Netflix, Inc*., 553 F. Supp. 3d 48, 57 (S.D.N.Y. 2021) ("As defendants acknowledge, the issue of actual malice is more appropriately weighed at a later stage of the proceedings;" partially denying motion to dismiss defamation claims) (citing *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710 (1964)). *See also Brimelow v. N.Y. Times Co*., No. 21-66-cv, 2021 U.S. App. LEXIS 31672, at *3-4 (2d Cir. Oct. 21, 2021) ( "malice is not a matter that requires particularity in pleading—like other states of mind, it may be alleged generally"). In contrast, the cases cited in the August 22 Order involved the applicable legal standards at other stages of litigation. *See*, *e.g., Kipper v. NYP Holdings Co*., 12 N.Y.3d 348, 357 (2009) ("a plaintiff must be held to the burden of adducing clear and convincing evidence of actual malice at the summary judgment stage so long as there has been a full opportunity to conduct discovery) (emphasis added; internal quotation omitted); *Garrison v. Louisiana*, 379 U.S. 64 (1964)

9

(applying standards enunciated in New York v. Sullivan to criminal defamation and reversing conviction of district attorney convicted of criminal libel for criticisms of judiciary).

The Second Circuit has found that "allegations give rise to a plausible inference that [the defendant] was recklessly disregarding the truth" when he published the statements in question without considering contradictory information – even where that contrary information was published six years earlier. *Palin v. N.Y. Times Co.*, 940 F.3d 804, 814 (2d Cir. 2019) (hereinafter, "*Palin I*") (overturning district court's dismissal to permit defamation allegations to proceed). Notably, in *Palin I*, the Second Circuit cautioned that at the motion to dismiss stage, "The test is whether the complaint is plausible, not whether it is less plausible than an alternative explanation," even though the "jury may ultimately agree with the district court's conclusion." *Palin I*, 940 F.3d at 815.

The August 22 Order directly conflicts with *Palin I*'s directive, holding that Netrebko's allegations of actual malice are insufficient not because they are not plausible but because Netrebko failed to adequately plead Gelb's "state of mind" and that Gelb's "subjective belief" was altered by the contradictory information. But such an allegation is not required at the pleadings stage; here, Netrebko alleged multiple facts preceding Gelb's defamatory statements that put him on notice of the falsity of his statements sufficient to support a finding of reckless disregard. At least fourteen separate paragraphs of the Complaint (ECF Doc. 27, ¶¶ 59, 59(a)-59(l), 60) allege specific facts supporting an inference of actual malice at this stage as they lay out the reasons why Gelb knew or should have known that his statements were false, his reckless disregard in failing to consider contrary sources, and his motives for disregarding these contrary sources. Here, the Complaint alleges that Gelb was aware that Netrebko publicly stated her views on the Russian invasion of Ukraine, ECF Doc. 27, ¶ 59(a), (b); publicly stated objective facts regarding her dealings with the Russian government, ¶ 59(c), (d), (h), (i); and publicly clarified other actions a full eight years before Gelb's statements, ¶

10

59(e); and the Complaint alleges additional facts demonstrating why Gelb acted with, at a minimum, reckless disregard of his statements' veracity. ¶ 59(j), (l).

These detailed allegations provide a basis for the Court to find that the Complaint adequately alleges actual malice, in contrast to the "mere denials" found insufficient in other cases, *Brimelow*, 2021 U.S. App. LEXIS 31672, at *7, and in contrast to cases which alleged that the speaker should have been aware that his sources were unreliable based only on events that occurred *after* publication of the alleged defamatory article. *Biro v. Condé Nast*, 807 F.3d 541, 545-46 (2d Cir. 2015).

In addition, the Complaint alleges that Gelb reviewed Netrebko's March 30, 2022 statement condemning the Russian invasion of Ukraine and clarifying her connections to Putin and the Russian government, and Gelb then provided his reaction to the statement to the media. (ECF Doc. 27, ¶ 35; *see also Id.*, ¶ 34, 59(c), 59(d) (describing Netrebko's March 30, 2022 statement)). After "specifically review[ing]" this "contrary publication," Gelb proceeded to make the alleged defamatory statements. *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 187 (S.D.N.Y. 2020).

Moreover, an intervening Second Circuit decision on the issue of actual malice clarified the quantum and nature of evidence that will permit a claim of actual malice to survive as a matter of law. Reversing the district court (for the second time in the same case), the Second Circuit held, "a district court may not credit the movant's self-serving explanations or adopt possible exculpatory interpretations on his behalf when interpretations to the contrary exist." *Palin II*, 2024 U.S. App. LEXIS 21801, at *25-26. To the extent that this is true on a Rule 50 motion, it applies all the more forcefully at the motion to dismiss stage. The Second Circuit explained that the district court should have permitted the jury to decide "both how to interpret and what weight to assign" to the contrary information that the defendant failed to consider, explaining that if the defendant was aware of the contrary information, "its contents would at a minimum allow a rational juror to plausibly infer that

11

[the defendant] recklessly disregarded the truth when he published the challenged statements." *Id.*, at *27. Similarly, here Netrebko alleged that Gelb made the defamatory statements at times when he knew or should have known that his statements were false based on the existence of contrary information, (ECF 27, ¶ 59(a)-59(l)), and "how to interpret and what weight to assign" these allegations should be determined by a factfinder, not by the Court as a matter of law.

Based on the Second Circuit's clear enunciation of the applicable law regarding evidence that will suffice to permit a jury to find actual malice, the Complaint in this case should be permitted to proceed past the pleadings stage.

### E. Netrebko's State Law Breach of Contract Claim is Not Precluded

In its August 22 Order, the Court held that Netrebko's claim for breach of contract was precluded by a prior labor arbitration. But in that proceeding, the arbitrator held that his authority only extended to considering arguments under the collective-bargaining agreement (the "CBA"), the agreements at issue here were not cognizable under the CBA, and therefore, arguments about these agreements based on state common law were "misplaced." (ECF Doc. 38-2, p. 29-30). The Court should now consider those common law claims that the arbitrator lacked authority to rule on. *Parker v. Blauvelt Volunteer Fire Co.,* 93 N.Y.2d 343, 349 (1999) ("res judicata is inapplicable where the plaintiff was unable to … Seek a certain remedy or form of relief in the first action").

To hold otherwise would leave Netrebko – and all Met artists – without recourse for the common law agreements which she entered into and relied on. Where the arbitrator concluded that the contracts were not cognizable under the CBA, the only legal framework properly before him, Netrebko should be permitted to present her common law breach of contract claims in this proper forum. *See Parker*, 93 N.Y.2d at 349 ("a rigid application of res judicata in this instance, rather than preventing plaintiff from obtaining two days in court, would unjustly deprive him of one").

12

## II. IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY PORTIONS OF ITS ORDER FOR AN INTERLOCUTORY APPEAL OR ENTER FINAL JUDGMENT ON THE DISMISSED CLAIMS UNDER RULE 54(b)

Pursuant to 28 U.S.C. § 1292(b), a district court may certify an order for interlocutory appeal where: (1) the order involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. *See SEC v. Rio Tinto PLC*, No. 17 Civ. 7994, 2021 U.S. Dist. LEXIS 89848 (S.D.N.Y., May 11, 2021) (Torres, J.). A controlling question of law exists if, inter alia, reversal of the district court's opinion could significantly affect the conduct of the action, or the certified issue has precedential value for a large number of cases. *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 1997 U.S. Dist. LEXIS 11937 at *4 (S.D.N.Y. Aug. 12, 1997). A substantial ground for difference of opinion exists where: (1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit. *Rio Tinto PLC*, 2021 U.S. Dist. LEXIS 89848, at *5. Finally, in determining whether certification will materially advance the ultimate termination of the litigation, courts must consider the institutional efficiency of both the district court and the appellate court, and a relevant concern to this end is the resolution of all actionable claims in one trial and avoiding the possibility of a second trial following later appellate review. *Id.*

Here, the portions of the Order dismissing Netrebko's claims involve three controlling questions of law: (1) whether Netrebko's allegation that the Met's termination of her relationship was based on national origin discrimination was adequately alleged to permit an inference of discrimination under the NYCHRL and NYSHRL sufficient to survive a motion to dismiss; (2) whether Netrebko's allegation that Gelb made defamatory statements against her was adequately alleged to permit the question of actual malice to survive a motion to dismiss; and (3) whether a state common law claim that is expressly excluded from consideration by a labor arbitrator is barred by the doctrine of res judicata in a subsequent matter. A reversal of any of these decisions would permit the

13

case to proceed with a more fulsome set of claims.

In addition, these issues have precedential value for a significant number of cases. The national origin discrimination issue presented in this case is significant and of increasing importance. The question of when employers' "reactions . . . to world events"[6] – here, the Russian invasion of Ukraine – are permissibly based on (unprotected) political views or instead constitute unlawful discrimination has become all the more widespread and critical as employers have increasingly taken action against employees related to the current conflict in the Middle East (and cases will be increasingly filed in federal courts as, *inter alia*, EEOC timelines pass).[7] As to the defamation claim, commentators have observed an uptick in defamation cases,[8] and it is important for parties and district courts involved in these cases to understand how the Second Circuit's recent decision in *Palin II* applies at the motion to dismiss stage. As to the breach of contract claim, Netrebko may be one of the first artists with the resources available to challenge the Met's cancellation of "holds," and her ability to protect her rights will have important implications for other artists who are harmed by an arts institution's abuse of this industry practice of entering into "holds" years before the institution commits the agreement to CBA-sanctioned language.

Next, there are substantial grounds for difference of opinion on both issues. As to the national

---

[6] EEOC, "Questions and Answers for Employers: Responsibilities Concerning the Employment of Individuals Who Are, or Are Perceived to Be, Muslim or Middle Eastern," (Dec. 23, 2015), https://www.eeoc.gov/laws/guidance/questions-and-answers-employers-responsibilities-concerning-employment-individuals.

[7] *See*, *e.g.*, Riddhi Setty, "EEOC Watching for Workplace Bias Incited by Israel-Hamas War," Law360 (Jan. 8, 2024), avail. at https://news.bloomberglaw.com/daily-labor-report/eeoc-watching-for-workplace-bias-incited-by-israel-hamas-war; *Chehade v. Foley & Lardner, LLP*, 24-cv-4414 (N.D. Ill., June 19, 2024) (where law firm revoked employment offer purportedly based on views about Middle East conflict, alleging discrimination on the basis of religion and ethnicity).

[8] *See*, *e.g.*, Sean O'Driscoll, "Defamation Lawsuits Are on the Rise," Newsweek (Aug. 23, 2024), avail. at https://www.newsweek.com/donald-trump-rudy-giuliani-johnny-depp-defamation-libel-cases-mike-lindell-alex-jones-1941397.

origin claim, the question of separating political viewpoint from impermissible national origin discrimination has not been squarely dealt with by the Second Circuit, but as noted above, is likely to arise in cases related to the Middle East conflict. On the defamation claim, there is a new and novel question of the question of the quantum and nature of evidence supporting an inference of "actual malice" on the heels of the Second Circuit's very recent decision concerning a similar issue in the Rule 50 posture. On the breach of contract claim, this appears to be an issue of first impression for the Circuit and involves complex questions of the interplay between labor arbitrations and employees' abilities to protect their own interests.

Finally, an interlocutory appeal will ultimately preserve judicial resources because it will permit all claims to be dealt with in a single action, rather than risking a continuation of the discovery, summary judgment, and trial phases of the litigation with only the gender discrimination claim and the need for the district court to then oversee each of these phases again if the national origin, defamation, and breach of contract claims are reinstated.[9]

Accordingly, should the Court decline to reconsider the August 22 Order, Netrebko respectfully requests that the Court certify these issues in the August 22 Order for interlocutory appeal.

In the alternative, Netrebko respectfully requests that the Court enter final judgment on the dismissed claims under Federal Rule of Civil Procedure 54(b). The Court's legal rulings have finally disposed of those claims which, under this Court's holdings, are separate from the claims that remain.

---

[9] The parties have been proceeding through the discovery process by engaging in discovery on all claims, including the now-dismissed claims. The August 22 Order will require the parties to negotiate a revised scope of discovery now that certain claims have been dismissed. It would be more efficient for Plaintiff to be permitted to appeal the Court's dismissal of these claims now, via interlocutory appeal, in order to avoid the prejudice, burden and expense that would result (for all parties and the Court) if the parties are required to conduct additional discovery relating to the dismissed claims if the Second Circuit reverses the August 22 Order on appeal only after a final decision in this matter.

There are three prerequisites for entering a partial final judgment under Rule 54(b), as relevant here: "(1) multiple claims or multiple parties must be present, (2) at least one claim, or the rights and liabilities of at least one party, must be finally decided within the meaning of 28 U.S.C. § 1291, and (3) the district court must make 'an express determination that there is no just reason for delay' and expressly direct the clerk to enter judgment." *Ginett v. Computer Task Force*, 962 F.2d 1085, 1091 (2d Cir. 1992). Here, the entry of final judgment would advance "the interest of sound judicial administration," *Ginett*, 962 F.2d at 1095 (internal citation omitted), for the reasons discussed above. If final judgment were entered and an appeal taken, the Second Circuit would not "be deciding any issues which remain for decision in the district court, and nothing the district court can later do on the remaining . . . claims can alter [the Court of Appeals'] decision." *Ginett*, 962 F.2d at 1097.

## CONCLUSION

This Court should grant Netrebko's motion for reconsideration of her national origin discrimination, defamation, and breach of contract claims, or in the alternative, grant Netrebko's motion for leave to file an interlocutory appeal pursuant to 28 U.S.C. § 1292(b), or certify that there is no just cause for delay and direct the clerk to enter a final judgment on her dismissed claims pursuant to Rule 54(b).

Dated: New York, NY
September 5, 2024

                                          Respectfully submitted,

                                          /s/ Julie R. Ulmet
                                          Julie R. Ulmet, Esq.
                                          THE LAW OFFICES OF JULIE R. ULMET
                                          417 Grand St., #1804
                                          New York, NY 10002
                                          Tel (646) 396-0055
                                          julie@ulmetlaw.com
                                          *Counsel for Plaintiff Anna Netrebko*