# Pearson v. Gesner

United States Court of Appeals for the Second Circuit

February 13, 2024, Argued; January 13, 2025, Decided

Docket No. 22-1227

**Reporter**

2025 U.S. App. LEXIS 637 *; 125 F.4th 400; 2025 WL 77229

ROBERT PEARSON JR., Plaintiff-Appellant, - v. - SERGEANT GESNER, #138, OFFICER MORRIS, #437, OFFICER HALSTEAD, #148, OFFICER BROECKEL, #320, Defendants-Appellees[*].

**Counsel:** EMILY VILLANO, New York, **[*2]** New York (Jennifer M. Keighley, Orrick, Herrington & Sutcliffe, New York, New York, on the brief), for Plaintiff-Appellant[**].

CAROL C. PIERCE, Deputy County Attorney, Goshen, New York (Richard B. Golden, Orange County Attorney, Goshen, New York, on the brief), for Defendants-Appellees.

**Judges:** Before: KEARSE, PARK, and ROBINSON, Circuit Judges.

**Opinion by:** KEARSE

**Opinion**

KEARSE, *Circuit Judge*:

Plaintiff Robert Pearson Jr. appeals from a judgment of the United States District Court for the Southern District of New York (Philip M. Halpern, *Judge*), dismissing his *pro se* Amended Complaint brought under 42 U.S.C. § 1983 alleging principally that, while he was being held at the Orange County, New York Correctional Facility for a parole violation, corrections officers beat him up in his cell, played with his food, then sprayed chemicals in his eye, causing him continuing pain and impaired vision, and denied him medical care. The district court granted defendants' motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Amended Complaint for failure to state a claim. *See* Pearson v. Gesner, No. 21-CV-05670, 2022 U.S. Dist. LEXIS 87038, 2022 WL 1523166 (S.D.N.Y. May 13, 2022) ("May 2022 Opinion" or "D.Ct. Op.").

On appeal Pearson, now represented by appointed counsel, contends principally that the court erred in considering materials outside the Amended Complaint. We **[*3]** agree that the court erred in this respect, and we thus vacate the judgment in part and remand for further proceedings in connection with the

---

[*] Although in the caption of the operative complaint "Gesner" is a misspelling of the defendant's name Gessner, we "feel constrained to adhere to the erroneous spelling" for the caption, Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 555 n.* (1980). The Clerk of Court is instructed to amend the official caption to conform with the above.

[**] This Court appointed Jennifer Keighley and Emily Villano of Orrick, Herrington & Sutcliffe LLP to represent Mr. Pearson on appeal, and we are grateful to them for their able discharge of that responsibility.

allegations that defendants subjected Pearson to excessive force. In light of allegations in the Amended Complaint itself, we affirm so much of the judgment as dismissed claims that defendants denied Pearson medical assistance.

I. BACKGROUND

Pearson began this action with a complaint that named as defendants New York State and the Orange County Jail Medical Department. The district court dismissed without prejudice on the grounds that the State of New York had immunity under the Eleventh Amendment to the Constitution and that the Orange County Jail Medical Department lacked juridical existence apart from the county of which it was a part. See Pearson v. State of New York, No. 21-CV-5670, 2021 U.S. Dist. LEXIS 144047, 2021 WL 3292527, at \*1 (S.D.N.Y. Order, Aug. 2, 2021) ("2021 Order"). The court directed the Orange County Attorney to "identify the individuals involved in the incidents described within sixty days," and it directed Pearson to file an amended complaint naming individual defendants within 30 days of receiving that information. D.Ct. Op., 2022 U.S. Dist. LEXIS 87038, 2022 WL 1523166, at \*1 (describing 2021 Order at 3).

Before receiving that information from the Orange County Attorney, Pearson filed the Amended Complaint on September 7, 2021, against the defendants **[\*4]** listed in the caption above, to wit, "Gessner"--the author of an inmate misbehavior report (whose name is misspelled "Gesner" in captions)--and three officers listed in that report as participants in and/or witnesses to an event as to which Pearson had complained. In particular, Pearson had complained that officers meddled with his food and pepper-sprayed him. Pearson attached a copy of the April 24, 2021 Inmate Misbehavior Report ("Report" or "Misbehavior Report") to his Amended Complaint, with a note to the judge stating, "I'm sending the form that attach to the papers they go with my case! The papers is evidence for my case." (App'x at 20.)

A. *The Amended Complaint*

The Amended Complaint contains factual allegations that we accept as true for purposes of this appeal. See, e.g., Harrington v. County of Suffolk, 607 F.3d 31, 33 (2d Cir. 2010) (when reviewing a district court's dismissal for failure to state a claim, the appellate court is to assume "all well-pleaded, nonconclusory factual allegations in the complaint to be true"). As we interpret his handwritten Amended Complaint, Pearson alleged that in his cell, on an unspecified date:

> I was on the Door because I had a problem with my food! I was telling the officers about my food. The officer **[\*5]** put his haed [*sic*] into my food hold [*sic*] [a]n[d] spreyed [*sic*] me in my eye my right eye with some typ [*sic*] of chemical, befor [*sic*] this the officers was beating me up in my cell [a]n[d] they was palying [*sic*] with my food befor [*sic*] this [a]n[d] thats way [*sic*] the officers was Doing This Day! I ask the officer to give me another tray because it was something in my tray [a]n[d] he told me no! the officer put his head [*sic*] into my food hold [*sic*] [a]n[d] speyed [*sic*] me in my right eye with chemical. They took me to medical [a]n[d] medical did not Do anything for me, The officers did not give me a shower or did They give me new clothing they put me back into a call [*sic*] the same way they took me out! The officers put me into a cell [a]n[d] they turned off the water in my cell [a]n[d] they did not give me any new clothing They Just put me back into anther [*sic*] call [*sic*] with the same thing on! I was in very bad pain. I did not have any water or anything. This should be on Video Tape!!

(Amended Complaint at 4.) Pearson alleged, "I be in very bad pain for what They did to me [a]n[d] I can not see how I could befor [*sic*] befor [*sic*] what happen to me!!" (*Id.* at 5.)

Defendants moved **[*6]** to dismiss the Amended Complaint under Rule 12(b)(6) for failure to state a claim, contending principally that in the incident referred to, Gessner had sprayed Pearson with "oleoresin capsicum ('O.C. spray') . . . in order to obtain compliance by Plaintiff who was disobeying orders to remove his hand from the tray slot in his cell." (Declaration of Chief Assistant County Attorney Carol C. Pierce in Support of Defendants' Motion To Dismiss, dated February 1, 2022 ("Pierce Decl."), ¶ 3.) In addition to the Amended Complaint, defendants attached to their motion as Exhibit B a "copy of a handheld video that was taken of Plaintiff on April 24, 2021, immediately after the use of the O.C. spray and his escort to medical," and as Exhibit C a copy of a "Deprivation Order," both of which defendants stated were "incorporated by reference into Plaintiff's amended complaint." (*Id.* ¶¶ 6-7.)

B. *The District Court's Decision*

In its May 2022 Opinion, the district court granted defendants' motion and dismissed the Amended Complaint, with prejudice, for failure to state a claim. Citing principles governing review of Rule 12(b)(6) motions, the court stated that it could not consider the Deprivation Order submitted by defendants **[*7]** "because it [wa]s neither integral to--nor referenced within--the" Amended Complaint. D.Ct. Op., 2022 U.S. Dist. LEXIS 87038, 2022 WL 1523166, at *1 n.4. However, the court deemed it appropriate to consider defendants' video, "taken on April 24, 2021 immediately after the use of pepper spray," because the video had been mentioned in the Amended Complaint. *Id.* The court found that "Plaintiff relied on the video to support his claims, alleging specifically that the events 'should be on video tape!!'" *Id.* (quoting Amended Complaint at 4).

The district court also found it permissible to consider the Misbehavior Report authored by Gessner, stating that

> *Plaintiff's allegations are supplemented by* the Inmate Misbehavior Report annexed to the Amended Complaint. That document, authored by Gessner, indicates that the underlying events took place on April 24, 2021.

D.Ct. Op., 2022 U.S. Dist. LEXIS 87038, 2022 WL 1523166, at *2 (emphasis added). The court quoted Gessner's Misbehavior Report descriptions of the incident as follows:

> "At 1112 hours, I entered Delta-1 Housing Unit after being advised that Inmate Pearson, Robert (2021-00444) was refusing to comply with staff orders. Inmate Pearson's left arm was placed through the tray slot to prevent staff from securing the tray slot. Inmate Pearson disobeyed all orders to remove **[*8]** his left hand from the tray slot.
> "At 1116 hours, Inmate Pearson was advised to remove his hand or he would be sprayed with oleoresin capsicum (pepper spray). Inmate Pearson continued to refuse orders. I deployed two one-second bursts of oleoresin capsicum through the lower tray slot striking Inmate Pearson in the facial area.
> "As a result of being pepper-sprayed, Inmate Pearson moved his left arm revealing that Inmate Pearson stuffed paper in the lock latch to prevent closure. Officer Morris #437 removed the paper from the lock latch. Officer Morris and Officer Halstead #148 then pushed Inmate Pearson's left arm through the tray slot back into his cell and secured the lower tray slot. "Inmate Pearson was issued a misbehavior report for this incident."

*Id.* The district court also noted that

> Plaintiff was thereafter found guilty of disruptive conduct, tampering with a security device, and disobeying a correction officer. He was penalized with fourteen days' keeplock.

*Id.* (citing a page appended to the Misbehavior Report, titled "Hearing Report Form" and dated April 26, 2021).

After noting general principles governing assessment of the sufficiency of a complaint to state a claim--including **[*9]** the requirement that the complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and the requirements that the court draw all favorable reasonable inferences from the facts pleaded and "interpret the pleadings of a *pro se* plaintiff liberally," D.Ct. Op., 2022 U.S. Dist. LEXIS 87038, 2022 WL 1523166, at *3 (internal quotation marks omitted)--the court concluded that Pearson's claims of excessive force should be dismissed. First, it stated that "[t]he Amended Complaint lacks any allegation suggesting that Morris, Halstead, or Broeckel participated in an actionable constitutional violation." 2022 U.S. Dist. LEXIS 87038, [WL] at *4. Second, while finding that, with respect to having had chemicals sprayed in his eye, Pearson "pled plausibly that force was used purposefully" by Gessner, the district court stated that the "sole issue" was "whether the facts pled suggest plausibly that the force used was objectively unreasonable." 2022 U.S. Dist. LEXIS 87038, [WL] at *5. The court stated that

> [t]he Inmate Misbehavior Report reveals that Gessner discharged the *pepper spray in two one-second bursts to maintain discipline and secure Plaintiff's compliance* with the repeated direction to remove his arm from the tray slot in his cell door. (Am. Compl. at 9).

*Id.* (emphases **[*10]** added). The court concluded that "[s]uch a use of force is not objectively unreasonable." *Id.*

The district court also discussed the video submitted by defendants, showing that after Pearson was sprayed, "correction officers--Defendants, presumably--" took Pearson to the infirmary. 2022 U.S. Dist. LEXIS 87038, [WL] at *2. The court summarized the video as to subsequent events, which included Pearson profanely complaining, refusing to allow a nurse to check his vital signs, and insisting that he immediately be taken back to his cell. See 2022 U.S. Dist. LEXIS 87038, [WL] at *2-*3. The court concluded that the Amended Complaint did not allege facts sufficient to show any "deliberate indifference to a serious medical need," 2022 U.S. Dist. LEXIS 87038, [WL] at *6, and that even had Pearson made such a showing, his claim for denial of medical care "would still fail because, *inter alia*, Plaintiff refused medical care at the infirmary," 2022 U.S. Dist. LEXIS 87038, [WL] at *6 n.10 (citing defendants' Exhibit B, the video, at 04:25-09:20).

Finally, as to Pearson's complaints that officers had put their hands in his food, the district court ruled that Pearson also failed to state a claim for unconstitutional "conditions of confinement," 2022 U.S. Dist. LEXIS 87038, [WL] at *6, stating that "Plaintiff pled simply that he missed a meal and was placed in a cell without running water. (Am. Compl. **[*11]** at 4). Without any additional facts, this conclusory allegation is insufficient to plead plausibly that the condition at issue was 'sufficiently serious' for the purposes of a conditions of confinement claim," 2022 U.S. Dist. LEXIS 87038, [WL] at *7.

Concluding that further amendments by Pearson would be futile, the district court dismissed his federal claims with prejudice and declined to exercise jurisdiction over any state-law claims he might wish to pursue. *See* D.Ct. Op., 2022 U.S. Dist. LEXIS 87038, 2022 WL 1523166, at *8.

Pearson timely appealed the district court's dismissal of his claims of excessive force and deliberate indifference to his medical needs. This Court appointed counsel to represent him in the appeal.

II. DISCUSSION

On appeal, Pearson contends principally that, in granting the Rule 12(b)(6) motion, the district court erred by considering Gessner's Misbehavior Report narrative and the video submitted by defendants. He argues that the Amended Complaint adequately pleaded that he was subjected to objectively unreasonable force, that he was denied medical assistance for his serious medical condition, and that the individual defendants were plausibly alleged to have been involved in those events--or at least that he should have been given the opportunity to file a further **[*12]** amended complaint to address any substantive deficiencies in his claims against these newly identified individual defendants.

HN1[↑] ] We review *de novo* a district court's grant of a motion to dismiss for failure to state a claim. See Quinones v. City of Binghamton, 997 F.3d 461, 466 (2d Cir. 2021). For the reasons that follow, we conclude that the Amended Complaint failed to state claims against the present defendants for denial of medical assistance. However, we conclude that in dismissing the claims for use of excessive force, the district court erred by considering materials outside the Amended Complaint that were not relied on by Pearson in drafting his pleading.

A. *Claims of Denial of Medical Assistance*

As to Pearson's challenge to the dismissal of his claims that defendants denied him medical assistance, we conclude that the Amended Complaint itself--without regard to any materials outside his pleading--forecloses such a claim. The Amended Complaint named only four defendants, all of them corrections officers. And, asserting that "the officers" had "beat[en]" him in his cell and played with his food, Pearson alleged that after an officer "speyed [*sic*] me in my right eye with chemical[, *t*]*hey took me to medical* . . . ." (Amended Complaint at 4 (emphasis **[*13]** added).)

The Amended Complaint's factual statement that after Pearson was sprayed with chemicals the officers took him to the medical facility contradicts the contention that the officers denied him medical assistance. We thus affirm so much of the judgment as dismissed Pearson's claims that the named defendants denied him medical assistance.

B. *Claims of Excessive Force*

HN2[↑] ] Generally, in determining whether a complaint states a claim, the court is required to make the assessment based solely on the allegations in the complaint, without considering extraneous facts and materials. A plaintiff may incorporate allegations in the complaint by reference to another document, *see, e.g.,* Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) ("*Chambers*"); and "where the complaint relies heavily upon its terms and effect," the "document is integral to the complaint," Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (internal quotation marks omitted). But extraneous materials do not become integral parts of the complaint unless the plaintiff relied on them in drafting the complaint. See Chambers, 282 F.3d at 153 (stressing that the "plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion" (emphasis in original)). **[*14]**

HN3[↑] ] Further, a plaintiff does not necessarily "adopt as true *the full contents* of any document attached to a complaint or adopted by reference." *Gant v. Wallingford Board of Education, 69 F.3d 669, 674 (2d Cir. 1995)* (emphasis added). For example, where the plaintiffs attached a document that they alleged was a defendant's "self-serving document," it was "error for the district court to assume that plaintiffs' complaint adopted the [defendant's] exculpatory conclusions." *Id. at 675*. "HN4[↑] ] Rather than accepting *[as true] every word* in a unilateral writing by a defendant and attached by a plaintiff to a complaint," the court must "*consider why a plaintiff attached the documents*." *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 455 (7th Cir. 1998)* (emphases added). "*The purpose for which the document is offered is particularly important where the document is one prepared by or for the defendant*. Such unilateral documents may reflect *the defendant's version of contested events* or contain self-serving, exculpatory statements that are *unlikely to have been adopted by the plaintiff*." *Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 168 (4th Cir. 2016)* (emphases added). And "[t]reating the contents of such a document as true simply because it was attached to or relied upon in the complaint, even though the plaintiff relied on it for purposes other than truthfulness, would . . . enable parties to hide behind untested, [*15] self-serving assertions." *Id.* (internal quotation marks omitted). In sum,

> in cases where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true. *For example, if a prisoner attaches an unfavorable decision from a prison tribunal to show that he has exhausted his administrative remedies, he does not thereby adopt the factual findings of that unfavorable decision*.

*Id. at 167* (emphasis added).

HN5[↑] ] When a defendant submits extraneous materials with a *Rule 12(b)(6)* motion to dismiss, the district court must either ignore the materials and resolve the motion on the basis of the complaint alone or convert the motion to one for summary judgment and give the parties the opportunity to conduct appropriate discovery. *See Fed. R. Civ. P. 12(d)*; *Palin v. New York Times Co., 940 F.3d 804, 810-11 (2d Cir. 2019)*. In the present case, the district court did neither.

Here, while the district court noted that it was allowed to consider extraneous items if the plaintiff had "relie[d] heavily" on their "terms and effect," *D.Ct. Op., 2022 U.S. Dist. LEXIS 87038, 2022 WL 1523166, at *1 n.4* (internal quotation marks omitted), neither of the two extraneous items that the court considered met that criterion. First, while the court noted that the Amended Complaint stated [*16] that "the events 'should be on video tape,'" *id.*, that statement did not indicate that Pearson had relied on a video tape in framing his pleading. Indeed, his "should be" phrasing suggests that Pearson in fact had not seen the video, and perhaps that he did not even know whether a video existed. Further, while the court stated that Pearson relied on the video to support his "claims"--plural--*id.*, the video submitted by defendants could not have been relied on for the claim that defendants had beaten Pearson, or had contaminated his food with their hands and then sprayed him with chemicals, because the video did not begin until "*after* the use of the pepper spray," *D.Ct. Op., 2022 U.S. Dist. LEXIS 87038, 2022 WL 1523166, at *1 n.4* (emphasis added); *see also* Pierce Decl. ¶ 6 ("Exhibit 'B' is . . . a handheld video that was taken . . . immediately after the use of the O.C. spray").

Second, although the court stated that the Amended Complaint was "supplemented by the Inmate Misbehavior Report annexed to the Amended Complaint," *D.Ct. Op., 2022 U.S. Dist. LEXIS 87038, 2022*

WL 1523166, at *2, that characterization was apt only with respect to the issue as to which the court had earlier instructed Pearson to file an amended complaint. In the 2021 Order, the court had noted that the defendants named in the original complaint **[*17]** were not suable entities and had instructed the Orange County Attorney to identify for Pearson the county employees involved in the events of which he complained. Pearson filed the Amended Complaint naming Gessner, Morris, Halstead, and Broeckel as defendants, and attached the Misbehavior Report which stated that Gessner, Morris, Halstead, and Broeckel had at least been present. It is reasonable to infer that he attached the Misbehavior Report as evidence that he was now suing the individuals involved, in compliance with the only instruction given to him by the court in its 2021 Order.

In contrast, the narrative provided by the Misbehavior Report gave a version of the events that significantly differed from the allegations in the Amended Complaint. The Report's narrative, as quoted by the district court and reprinted in Part I.B. above, principally stated (a) that Pearson was refusing to comply with officers' orders, (b) that he was physically preventing closure of his food tray slot, (c) that he was warned that if he did not obey an order to cease that obstruction he would be sprayed with pepper spray, (d) that he was pepper-sprayed only after having been so warned, and (e) that Gessner **[*18]** had deployed only two short bursts of pepper spray. In the Amended Complaint, there was no allegation that Pearson was obstructing any security device, or that he was failing to comply with any orders, or that he was given any warning that an officer would pepper-spray him in the face, or that the spraying was in fact brief.

In sum, the factual allegations in the Amended Complaint did not provide a basis for an inference that Pearson had given the officers cause to spray him with injurious chemicals. And Pearson--who most reasonably can be interpreted as attaching the Misbehavior Report to show that he was naming the correct individuals as defendants--cannot be reasonably be understood to have relied on the Inmate Misbehavior Report's self-serving assertions as to the events in drafting the Amended Complaint. The district court erred in accepting Gessner's narrative as true, and thereby ruling that Gessner's spraying of Pearson was objectively reasonable and that Pearson therefore had failed to state a claim for excessive force.

We also note that the Amended Complaint alleged that the officers, after returning Pearson from the infirmary to a cell, turned off the water in the cell. The **[*19]** district court viewed this allegation (and Pearson's claims that officers contaminated his food by putting their hands in it) as asserting relatively routine grievances about "conditions of confinement"; it minimized them by stating that "Plaintiff pled simply that he missed a meal and was placed in a cell without running water," D.Ct. Op., 2022 U.S. Dist. LEXIS 87038, 2022 WL 1523166, at *7. But Pearson does not pursue a conditions-of-confinement claim here (see Pearson brief on appeal at 11 n.2); and the Amended Complaint's lack-of-water complaint was not simply that the cell in which he was placed did not have running water; the allegation was that the officers affirmatively "*turned off* the water in [his] cell." (Amended Complaint at 4 (emphasis added).) That allegation could be understood to assert, in the circumstances alleged, the deliberate perpetuation of the effect of an unjustified spraying with injurious chemicals, *i.e.*, a further claim of excessive force. *Cf., e.g.,* Headwaters Forest Defense v. County of Humboldt, 276 F.3d 1125, 1130-31 (9th Cir. 2002) ("a refusal without cause" to allow access to water "to alleviate [pepper spray's] harmful effects constitutes excessive force" (internal quotation marks omitted)).

Pearson v. Gesner

Given that the district court erred in considering--and adopting--the Misbehavior Report's description of **[*20]** the events as set out in Gessner's self-serving narrative, which differed in nearly every way from the events described in the Amended Complaint, we vacate so much of the judgment as dismissed Pearson's claims for use of excessive force and remand for further proceedings.

C. *On Remand*

There is merit, however, in the district court's observation that the Amended Complaint does not indicate which complained-of acts are alleged to have been performed by which of the named defendants. Nor does this pleading make clear whether Pearson attributes some of those acts to only one, or to more than one, officer. In addition, the record includes an October 4, 2021 letter from Pearson to the district judge, stating that in referring to a beating, Pearson had not intended his Amended Complaint to indicate that he had been beaten by the present defendants. (*See* D.Ct. Dkt. 21, Oct. 14, 2021.)

On remand, Pearson--preferably with counsel appointed or continuing to represent him--should be allowed to file a second amended complaint. His new pleading should at least identify, to the extent possible without the need for some limited discovery, *cf. Davis v. Kelly, 160 F.3d 917, 918, 922 (2d Cir. 1998)*, which defendant or defendants engaged in which of the alleged **[*21]** acts of excessive force, and should clarify other aspects of the excessive-force claims he wishes to pursue.

CONCLUSION

We have considered all of the parties' arguments in support of their respective positions and, except as indicated above, have found them to be without merit. The judgment is affirmed insofar as it dismissed Pearson's claims that these defendants denied him medical assistance. To the extent that the judgment dismissed claims asserting that Pearson was subjected to excessive force, it is vacated, and the matter is remanded for further proceedings not inconsistent with this opinion.

---

**End of Document**