USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _7/29/2025_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANNA NETREBKO,

                Plaintiff,

-against-

METROPOLITAN OPERA ASSOCIATION, INC. d/b/a THE METROPOLITAN OPERA and PETER GELB, in his professional and individual capacities,

                Defendants.

23 Civ. 6857 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Anna Netrebko, a Russian opera singer, brings this action against Defendants, the Metropolitan Opera Association, Inc., doing business as the Metropolitan Opera, and Peter Gelb, its general manager (collectively, the "Met"), alleging that the Met discriminated against her, defamed her, and breached contracts with her when it fired her shortly after Russia's 2022 invasion of Ukraine. *See generally* Second Am. Compl. ("SAC"), ECF No. 27. By order dated August 22, 2024 (the "Dismissal Order"), the Court dismissed Netrebko's breach of contract claims, national origin discrimination claims, and defamation claim. Dismissal Order, ECF No. 64; *Netrebko v. Metro. Opera Ass'n, Inc.*, No. 23 Civ. 6857, 2024 WL 3925377 (S.D.N.Y. Aug. 22, 2024). Netrebko now moves for reconsideration of the Dismissal Order or, in the alternative, certification of an interlocutory appeal or entry of final judgment on the dismissed claims. Mot., ECF No. 65; Pl. Mem., ECF No. 66. For the reasons stated below, the motion is GRANTED IN PART and DENIED IN PART.

# DISCUSSION[1]

I. <u>Reconsideration</u>

    a. Legal Standard

"Reconsideration of a previous order by the court is an extraordinary remedy to be employed sparingly." *In re Beacon Assocs. Litig.*, 818 F. Supp. 2d 697, 701 (S.D.N.Y. 2011) (citation omitted). It should be granted "when the [movant] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). Only errors that are "direct, obvious, and observable," *Corpac v. Rubin & Rothman, LLC*, 10 F. Supp. 3d 349, 354 (E.D.N.Y. 2013) (citation omitted), or that leave the Court "with the definite and firm conviction that a mistake has been committed," *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985) (citation omitted), warrant reconsideration.

"A motion for reconsideration is not 'an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced.'" *Mikhaylova v. Bloomingdale's Inc.*, No. 19 Civ. 8927, 2023 WL 2237541, at *1 (S.D.N.Y. Feb. 27, 2023) (quoting *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005)). Such a motion is appropriate, however, when "the movant demonstrates that the Court has overlooked controlling decisions or factual matters that were put before it on the underlying motion, and which, had they been considered, might have reasonably altered the result before the [C]ourt." *Regent Ins. Co. v. Storm King Contracting, Inc.*, No. 06 Civ. 2879, 2008 WL 1985763, at *1 (S.D.N.Y. May 7, 2008) (citation omitted).

---

[1] The Court presumes familiarity with the facts alleged in the complaint and the reasoning supporting the Dismissal Order and repeats them here only as necessary.

b. Matters Incorporated in the Complaint by Reference

First, Netrebko contends that reconsideration is warranted because, in the Dismissal Order, the Court improperly relied on factual material beyond the scope of the complaint. Pl. Mem. at 2. Netrebko raised the substance of this argument in her opposition to the Met's motion to dismiss. *See* Pl. Opp. at 8–9, ECF No. 42. The Court considered the argument and rejected it. Dismissal Order at 3 n.2; *id.* at 4 n.3. On that basis alone, the Court may deny Netrebko's motion for reconsideration as it pertains to the materials the Court considered in the Dismissal Order. *See Mikhaylova*, 2023 WL 2237541, at *1 (stating that a "motion for reconsideration is not an occasion for repeating old arguments previously rejected" (citation omitted)).

The argument also fails on the merits. In adjudicating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "must confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016) (quoting *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)). Statements and documents may be incorporated in the complaint through an express statement to that effect in the pleading. They may also be impliedly incorporated when the complaint makes "detailed reference" to the materials. *Henneberger v. County of Nassau*, 465 F. Supp. 2d 176, 184 (E.D.N.Y. 2006) (citing *Paulemon v. Tobin*, 30 F.3d 307, 308–09 (2d Cir. 1994)). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Id.* (alteration omitted) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

Netrebko argues that the Court erred by finding that a labor arbitration decision and a

3

*New York Times* article were incorporated in her complaint by reference. Pl. Mem. at 2. The cases she relies upon are inapposite because each concerned materials that were *not* incorporated by reference in the complaint. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016); *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 426 (2d Cir. 2008); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006). Here, Netrebko mentioned the arbitration decision in multiple parts of her complaint. *See* SAC ¶¶ 7, 62–67. Indeed, she dedicated an entire section of the complaint to discuss the award, *id.* § F, and another section to discuss the issues she believes the award did not reach, *id.* § G. Because "the complaint makes detailed reference to the [arbitration award]," it "thereby incorporates it by reference." *Henneberger*, 465 F. Supp. 2d at 184.

The same is true of the *New York Times* article. Netrebko quotes from the article on the first page of her complaint. SAC ¶ 2. At the bottom of the page, she provides a complete citation to the article with a hyperlink directing readers to it. *Id.* ¶ 2 n.1. In her reconsideration motion, she makes much of the fact that her complaint quotes only "three words" from the article. Pl. Mem. at 2. But because Netrebko linked the article in the complaint and quoted from it, the Court reasonably found that she made "a clear, definite, and substantial reference" to the reporting, allowing the Court to consider "the full contents of th[e] article" and not merely the three quoted words. *Trump v. Vance*, 977 F.3d 198, 210 n.8 (2d Cir. 2020); *Doheny v. Int'l Bus. Machs., Corp.*, 714 F. Supp. 3d 342, 357 (S.D.N.Y. 2024).[2] Accordingly, Netrebko has not

---

[2] Even if the arbitration award and news article were extrinsic to the complaint, the result of the Dismissal Order would have been the same. The *Times* article had no bearing on the Court's analysis of the issues raised by the Met's motion to dismiss. *See, e.g.*, Dismissal Order at 13 (explaining that "the truth or falsity of the Met's stated reason for Netrebko's termination"—*i.e.*, her alleged statements of support for Russian president Vladimir Putin, including those cited in the *Times* article—"is immaterial so long as the Met's decision was based on a belief held in good faith"); *id.* at 14 ("Netrebko has alleged no facts which plausibly suggest that the Met's stated reason for her termination masked an invidious motive to discriminate against Russians."). The Court considered the arbitration award solely for the question of *res judicata*, a legal question that Netrebko's complaint and the Met's motion put in issue. *See Spoleto Corp. v. Ethiopian Airlines Grp.*, No. 21 Civ. 5407, 2022 WL 329265, at *5 (S.D.N.Y. Feb. 3,

shown that the Court clearly erred when it found that the arbitration award and news article were incorporated in the complaint by reference.

        c. National Origin Discrimination

Second, Netrebko contends that the Court applied the incorrect legal standards under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290, *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101, *et seq.*, in dismissing her national origin discrimination claims. Pl. Mem. at 4–8. The Court agrees, in part.

As an initial matter, Netrebko argues that the Court erred by considering the Met's "alleged legitimate reasons for the adverse employment action" at the pleading stage. *Id.* at 5. Her argument misreads the Dismissal Order. The Court did not consider whether the Met's stated reason for terminating Netrebko was, in fact, made in good faith. Rather, the Court found that Netrebko failed to allege any facts "which plausibly suggest that the Met's stated reason for her termination masked an invidious motive to discriminate against Russians." Dismissal Order at 14.

Netrebko argues that this, too, was error—that she *did* allege facts sufficient to support an inference of discrimination at the pleading stage, and the Court overlooked those facts in the Dismissal Order. Pl. Mem. at 6–7. The Court agrees. For an employment discrimination plaintiff to survive a motion to dismiss, she must plausibly allege facts that support that she "is a member of a protected class, was qualified [for the job], suffered an adverse employment action," as well as some facts that provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297,

---

2022) (explaining that courts deciding motions to dismiss "routinely" take judicial notice of decisions in other proceedings "[w]hen evaluating a prior action to determine whether claims are barred by *res judicata*" (citation omitted)). Moreover, the Court noted that "even if *res judicata* did not apply, the holds [would not be] enforceable based on the plain language of the [collective bargaining agreement]." Dismissal Order at 10.

311 (2d Cir. 2015). "An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically [or sexually] degrading terms; or its invidious comments about others in the employee's protected group." *Id.* at 312. "In the absence of [such] direct evidence of discriminatory intent, a plaintiff may also raise an inference of discrimination by demonstrating the disparate treatment of similarly situated employees." *Cooper v. Templeton*, 629 F. Supp. 3d 223, 230–31 (S.D.N.Y. 2022) (citation omitted); *see Littlejohn*, 795 F.3d at 312–13. Alternatively, "[t]he fact that a plaintiff was replaced by someone outside [her] protected class will ordinarily suffice for the required inference of discrimination . . . at the pleading stage." *Littlejohn*, 795 F.3d at 313 (citing *Zimmerman v. Assocs. First Cap. Corp.*, 251 F.3d 376, 381 (2d Cir. 2001)).

In the Dismissal Order, the Court found that Netrebko did not allege direct evidence of discriminatory intent. Dismissal Order at 13. It further found that Netrebko did not allege disparate treatment of any plausible comparator. *Id.* at 13–15. The Court concluded that the complaint was devoid of allegations sufficient to support the required inference of a discriminatory motive. *Id.* at 15. Netrebko contends, however, that the Court overlooked at least one allegation in the complaint—that the Met replaced Netrebko with exclusively non-Russian artists in the roles for which she had originally been cast. Pl. Mem. at 6–7; SAC ¶¶ 50(a)–(d).

As stated above, the Second Circuit has explained that, "[a]t the prima facie stage, 'the mere fact that a plaintiff was replaced by someone outside [her] protected class will suffice for the required inference of discrimination.'" *Littlejohn*, 795 F.3d at 313 n.11 (quoting *Zimmerman*, 251 F.3d at 381). Courts in this District have denied motions to dismiss employment discrimination claims on that basis. *E.g.*, *Bautista v. PR Gramercy Square Condo.*, 642 F. Supp. 3d 411, 425 (S.D.N.Y. 2022); *Richmond v. Sorensen*, No. 22 Civ. 10075, 2023 WL

6

4239083 at *3 (S.D.N.Y. June 27, 2023) (collecting cases). The Met claims that the Court correctly dismissed Netrebko's national origin claim because she failed to plausibly allege that she was similarly situated to the non-Russian artists who replaced her. Def. Opp. at 12, ECF No. 74. But Netrebko's allegations of replacement by employees outside her protected class are distinct from her allegations regarding differential treatment of comparators. In *Littlejohn*, the Second Circuit expressly distinguished such allegations from each other, explaining that either, standing alone, may be sufficient to state a claim. *See Littlejohn*, 795 F.3d at 312–13. It affirmed the district court's conclusion "that adverse actions taken against employees who are not similarly situated cannot establish an inference of discrimination" before emphasizing, "[h]owever," that "an inference of discrimination [can] arise[] when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class," as Netrebko has alleged occurred to her. *Id.* at 312–13 (citation omitted).

At least a few courts in this District have granted motions to dismiss notwithstanding allegations of replacement by an employee outside the protected class where the other allegations of the complaint undercut the reasonableness of a discriminatory inference that could be drawn from the fact of replacement. *E.g.*, *Mansaray v. Kraus Sec. Serv.*, No. 20 Civ. 1415, 2022 WL 445790, at *3–4 (S.D.N.Y. Feb. 14, 2022); *Cardwell v. Davis Polk & Wardwell LLP*, No. 19 Civ. 10256, 2020 WL 6274826, at *23 (S.D.N.Y. Oct. 23, 2020). Unlike those cases, however, Netrebko's complaint, taken as a whole, supports rather than undercuts the reasonableness of the *Littlejohn* inference. Among other allegations, she claims that the Met promoted the fact that it replaced her, a Russian, with a Ukrainian artist—and that Gelb even "admitted that [the new performer's] Ukrainian national origin was one reason the Met selected her for the role." SAC ¶ 50(b). Netrebko further alleges that "the Met did not ask artists who were not of Russian origin

7

about their views on Russia's actions or ask them to make statements about the war in Ukraine or denouncing Putin," even though some artists who performed at the Met had "received support from," or even "expressed support for, Putin and/or the Russian government." *Id.* ¶¶ 51, 52(b). Together, such allegations support the inference that Netrebko's replacement by non-Russian artists occurred under circumstances giving rise to at least a "minimal" inference of discrimination. *Littlejohn*, 795 F.3d at 313 (quoting *Zimmermann*, 251 F.3d at 381).

Netrebko raised this argument in her opposition to the Met's motion to dismiss, *see* Pl. Opp. at 5, 14–15, but the Court did not address the argument in the Dismissal Order. The Court correctly explained why Netrebko failed to plausibly allege differential treatment of similarly situated comparators but, unlike the *Littlejohn* decision, the Court's analysis proceeded no further. *See* Dismissal Order at 14–15.

Had the Court considered Netrebko's claim in light of the controlling principle articulated in *Littlejohn*, the claim would have "reasonably altered the result before the [C]ourt." *Regent Ins. Co.*, 2008 WL 1985763, at *1 (citation omitted). Indeed, considering the principle now, it does alter the Court's decision. "[W]hat must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified [for the job], suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311. The Court has already found that Netrebko's complaint satisfies the first three prongs. Dismissal Order at 12. Because Netrebko, a Russian, "was replaced by [non-Russians], [s]he also satisfies the fourth prong of the *prima facie* case." *Littlejohn*, 795 F.3d at 313 (quoting *De la Cruz v. N.Y.C. Hum. Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir. 1996)).

Accordingly, Netrebko's motion for reconsideration is granted as to her claim of national

origin discrimination, and her claim is reinstated.

        d. Actual Malice

Netrebko urges the Court to also reconsider the dismissal of her defamation claim. She argues that the Court misapplied the legal standard for determining whether actual malice is sufficiently alleged at the pleading stage. Pl. Mem. 8–12. The Court disagrees. The Dismissal Order relied on *Biro v. Conde Nast*, 807 F.3d 541 (2d Cir. 2015), in which the Second Circuit articulated the standard applicable to a motion to dismiss a defamation claim brought by a public figure. Dismissal Order at 22–23. *Biro* affirmed that actual malice "must be alleged plausibly in accordance with [Federal Rule of Civil Procedure] 8," meaning it must "be plausibly pleaded and supported by factual allegations" in the complaint. 807 F.3d at 544–45. Factual allegations that "refer[] to the nature and circumstances of the alleged defamation or previous dealings with the defendant" may be sufficient to support a plausible inference of actual malice, but "whether actual malice can plausibly be inferred will depend on the facts and circumstances of each case." *Id.* at 545–46; *see also id.* at 545 (describing "[t]he hurdles to plausibly pleading actual malice" as "significant" but "by no means insurmountable").

The Second Circuit has not departed from *Biro*. Applying the standard to Netrebko's complaint, the Court concluded that the pleading contained no more than "bare assertions of ill will." Dismissal Order at 23 (citation omitted). The complaint did not allege the types of "objective facts" from which courts ordinarily may draw a plausible inference of actual malice, such as those relating to "the defendant's own actions or statements, the dubious nature of [its] sources, [or] the inherent improbability of the story" spun by the defendant. *Id.* (citation omitted). The Court, therefore, found that the complaint "lack[ed] the degree of specificity required by *Iqbal* and *Twombly*" as to actual malice and dismissed the claim. *Id.* (quoting *Biro*,

9

807 F.3d at 545). Accordingly, Netrebko is incorrect that the Court applied the wrong legal standard to her defamation claim.[3]

      e.  Breach of Contract

The final ground on which Netrebko seeks reconsideration relates to her breach of contract claim. She claims that the Court failed to consider that the arbitrator did not reach Netrebko's breach of contract claims to the extent the contracts at issue fell beyond the scope of the collective bargaining agreement with the Met (the "CBA"). Pl. Mem. at 12. According to Netrebko, if the Court had considered the arbitrator's lack of authority to rule on those contracts, the Court would have recognized its own authority to resolve the claims. *Id.* The Court did not overlook the arbitrator's statement. The Court expressly held that even if Netrebko's contract claim were not barred by *res judicata* based on the arbitration award, Netrebko's reserved performances ("holds") with the Met would not be enforceable "based on the plain language of the CBA." Dismissal Order at 10. The Court explained that the CBA limits the legal effect of any and all agreements between the Met and Netrebko other than those that are executed in a "Standard Principals Contract" or "another form of CBA-approved contract," which the holds at issue indisputably were not. *Id.* Netrebko's motion for reconsideration does not address the Court's application of the CBA, which fully disposes of her claim. She has, therefore, failed to identify an issue of law or fact that the Court overlooked in its decision, or any clear error or manifest injustice in the Dismissal Order's treatment of her claim.

In sum, Netrebko's motion for reconsideration is GRANTED as to her national origin discrimination claims under the NYSHRL and NYCHRL, and DENIED in all other respects.

---

[3] The remainder of Netrebko's arguments with respect to actual malice merely seek to relitigate issues already raised before, and considered by, the Court in the Dismissal Order. *See* Pl. Mem. at 10–12. The Court, therefore, does not consider them. *See Mikhaylova*, 2023 WL 2237541, at *1.

II.  Interlocutory Appeal and Entry of Judgment

Netrebko moves for an order certifying her dismissed claims—the breach of contract and defamation claims—for interlocutory appeal or, alternatively, for an order entering final judgment on those claims under Federal Rule of Civil Procedure 54(b).

a. Legal Standard

A district court may certify an order for interlocutory appeal where (1) the "order involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The moving party bears the burden of establishing each of the three factors. *Bellino v. JPMorgan Chase Bank, N.A.*, No. 14 Civ. 3139, 2017 WL 129021, at *1 (S.D.N.Y. Jan. 13, 2017). Because interlocutory appeals are strongly disfavored, "only 'exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Klinghoffer v. S.N.C. Achille Lauro Ed Altrie-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 25 (2d Cir. 1990) (alteration in original) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)).

As an alternative to certifying a claim for interlocutory appeal, Rule 54(b) permits a district court to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties" if the court "determines that there is no just reason for delay." There are three requirements for a court to enter partial final judgment under Rule 54(b): (1) the presence of "multiple claims or multiple parties," (2) "at least one claim, or the rights and liabilities of at least one party, must be finally decided within the meaning of 28 U.S.C. § 1291," and (3) "the district court must make 'an express determination that there is no just reason for delay' and

expressly direct the clerk to enter judgment." *Ginett v. Comput. Task Grp., Inc.*, 962 F.2d 1085, 1091 (2d Cir. 1992) (emphasis omitted). The third factor "is left to the sound judicial discretion of the district court and is to be exercised in the interest of sound judicial administration." *Id.* at 1092 (citation omitted); *but see id.* at 1093 (noting that "federal policy generally disfavors 'piecemeal' appellate litigation"). Only claims that are "inherently inseparable" from or "inextricably []related" to claims that have not been dismissed are categorically inappropriate for entry of judgment under Rule 54(b). *Id.* at 1096.

      b. Application

The Court finds that neither certification nor entry of partial final judgment is warranted. None of the dismissed claims presents an issue as to which there is substantial ground for difference of opinion. Netrebko argues that the pleading standard that applies to defamation claims brought by public figures is a live issue in light of the Second Circuit's recent decision in *Palin v. N.Y. Times Co.* (*"Palin II"*), 113 F.4th 245 (2d Cir. 2024). Pl. Mem. at 15. But *Palin II* concerned a post-trial motion for judgment as a matter of law, not a motion to dismiss, and it changed little or perhaps nothing of the prevailing, substantive standard for defamation claims by public figures. That standard's applicability at the pleading stage has been settled since the Second Circuit's decision in *Biro*. As for the contract claim, Netrebko argues that the claim presents "complex questions of the interplay between labor arbitrations and employees' abilities to protect their own interests." Pl. Mem. at 15. In reality, the claim presents a straightforward application of preclusion and contract-interpretation principles. *See* Dismissal Order at 8–10. In short, Netrebko has not shown "substantial doubt" as to the correctness of the Court's Dismissal Order, *Century Pac., Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 372 (S.D.N.Y. 2008) (citation omitted), the existence of "conflicting authority on the issue[s]" presented, or that the

12

issues would be "particularly difficult" for the Second Circuit or would present matters of first impression for that court, *Cap. Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013). Accordingly, Netrebko's motion to certify her dismissed claims for interlocutory appeal is DENIED.

With respect to entry of partial final judgment under Rule 54(b), the Court agrees with Netrebko that her breach of contract and defamation claims are separable from her discrimination claims. *See* Pl. Mem. at 16; *Ginett*, 962 F.2d at 1096. "But 'not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims.'" *SEC v. Frohling*, 614 F. App'x 14, 17 (2d Cir. 2015) (alteration adopted) (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980)). "[I]n deciding whether there are no just reasons to delay the appeal of individual final judgments . . . , [the] [C]ourt must take into account judicial administrative interests as well as the equities involved." *Curtiss-Wright*, 446 U.S. at 8 (citation omitted). The Court must also be cognizant of the "historic federal policy against piecemeal appeals." *Id.* (citation omitted).

Netrebko contends that "an interlocutory appeal will ultimately preserve judicial resources because it will permit all claims to be dealt with in a single action, rather than risking a continuation of the discovery, summary judgment, and trial phases of the litigation" if the "defamation[] and breach of contract claims are reinstated" on appeal. Pl. Mem. at 15. It is speculative, however, that the Second Circuit would resolve Netrebko's anticipated appeal prior to the close of fact discovery, summary judgment, and/or trial in this matter. "[A]ccepting [Netrebko's] premise that the dismissed claims will one day be revived by the Second Circuit, even under the most optimistic projections, this will come after [discovery and, perhaps, dispositive motions practice or even trial] on the surviving claims, making separate [or continued

13

proceedings] inevitable." *Shaheed v. City of New York*, Nos. 14 Civ. 7424, 15 Civ. 3480, 2018 WL 3455406, at *2 (S.D.N.Y. July 18, 2018).

This matter has now been pending for several years, and the Court intends to nudge the parties through discovery and any remaining pretrial motion practice expeditiously—even accepting that discovery may need to be extended given Netrebko's reinstated discrimination claims. When this matter concludes, the parties will have a final judgment from which a consolidated appeal may be taken. It may encompass (1) the dismissal of Netrebko's contract and defamation claims and (2) an appeal by the losing party, if there is one, on Netrebko's discrimination claims. *Cromwell v. N.Y. City Health & Hosp. Corp.*, No. 12 Civ. 4251, 2013 WL 6423431, at *2 (S.D.N.Y. Dec. 9, 2013). "This orderly and customary process will, in turn, permit a single panel of the Second Circuit to resolve, in one decision," the open legal issues. *Id.* Weighing the equities and considering the judicial administrative interests involved, the Court finds that the best path forward is for the parties to litigate Netrebko's remaining claims to a final, appealable judgment in the customary manner.

Accordingly, Netrebko's alternative motion for entry of partial final judgment under Rule 54(b) is DENIED.

## CONCLUSION

For the reasons stated above, Netrebko's motion for reconsideration is GRANTED IN PART and DENIED IN PART, and her national origin discrimination claims are reinstated. In all other respects, her motion is DENIED.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 65.

SO ORDERED.

Dated: July 29, 2025
       New York, New York

_____
ANALISA TORRES
United States District Judge