THE LAW OFFICES OF

JULIE R. ULMET

August 12, 2025

***By ECF and Email (Torres_NYSDChambers@nysd.uscourts.gov)***
The Honorable Analisa Torres
United States District Court for the Southern District Of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

Re: *Anna Netrebko v. Metropolitan Opera Association, Inc., et al.*
Case No. 23-cv-6857

Dear Judge Torres,

This firm represents Plaintiff Anna Netrebko in the above-referenced matter. Pursuant to the Court's Individual Practices in Civil Cases Section III.A.i, Plaintiff submits this pre-motion letter regarding her request for leave to file a supplemental pleading pursuant to Federal Rule of Civil Procedure 15(d).

On July 29, 2025, the Court issued a decision on Plaintiff's Motion for Reconsideration (ECF Doc. No. 108). Based on that decision, the case is currently proceeding based on allegations of gender and national origin discrimination under the New York State and City Human Rights Laws. (ECF Doc. No. 27). Plaintiff seeks leave to file a supplemental complaint alleging that recent statements by Defendants give rise to new defamation and retaliation claims, and files this amended pre-motion letter pursuant to the Court's July 31, 2025 Order. (ECF Doc. No. 110).

As alleged in the proposed supplemental complaint (attached hereto as Exhibit A; hereinafter "Supp. Compl."), subsequent to Plaintiff's commencement of this litigation, Gelb and the Met waged a public campaign to defame Netrebko and disparage her in retaliation for instituting this litigation against them. (Supp. Compl., ¶ 4-8). This campaign—grounded in verifiably false statements concerning the Met's termination of Netrebko years earlier—was intended to inflict further harm on Netrebko's career. (*Id.*, 2). Gelb's direct references to this lawsuit in the recent disparaging and defamatory interviews show that they are attempts to retaliate against Netrebko for pursuing her claims against Defendants. (*Id.*, ¶ 4, 11). Moreover, Gelb's decision to unnecessarily defame Netrebko in an interview with Ukraine's national news agency—during a time when Ukraine and Russia are engaged in continuing and escalating conflict—can only have been intended to intimidate Netrebko and place her in harm's way. (*Id.*, ¶ 6, 12). The dissemination of the statements throughout Ukraine and beyond increased the possibility of threats of physical harm to Netrebko as she performs around the world. (*Id.*). These retaliatory statements were made at times of heightened public scrutiny for the Met and its financial future, and they

417 Grand Street No. 1804, New York, NY 10002
julie@ulmetlaw.com • 646-396-0055 • www.julieulmetlaw.com



discourage other Met artists and employees from exercising their rights under the law for fear of themselves being subjected to years of harassment by the Met. (*Id.*, ¶ 11).

It is unfortunate that Ms. Netrebko must make this request. She would certainly prefer that her dispute with the Met be an incident in her past that will be resolved through this judicial process. Unfortunately, even three years after the central events at issue in this litigation, and after Ms. Netrebko instituted litigation and sent multiple subsequent cease and desist letters, Defendants still have not relented in their smear campaign against her. She seeks the Court's leave to file a supplemental complaint in order to defend herself from their ongoing attacks and harassment.

**1. A Supplemental Pleading is Proper Under Rule 15(d)**

Rule 15(d) provides, "On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15. The Second Circuit has explained, "leave to file a supplemental pleading should be freely permitted when the supplemental facts connect it to the original pleading." *Quaratino v. Tiffany & Co*., 71 F.3d 58, 66 (2d Cir. 1995). A supplemental pleading is proper where "new factual allegations concern[] events that occurred subsequent to the filing of the original complaint but stem from the same conduct as the events in the original complaint." *Xue Shan Wang v. N.Y.C. Dep't of Youth & Cmty. Dev*., No. 21-CV-6271 (LGS) (VF), 2024 U.S. Dist. LEXIS 50570, at *15 (S.D.N.Y. Mar. 19, 2024) (permitting supplemental pleading after fact discovery closed but before dispositive motion practice began).

Here, the underlying facts at issue in Gelb's new statements relate to the same issues that are already part of this case as they concern the events surrounding Defendants' discharge of Plaintiff. (Supp. Compl., ¶ 4-8). Permitting Plaintiff's supplemental pleading will promote judicial economy by allowing the Court to adjudicate all of Plaintiff's claims against Defendants at once since the recent events flow from the same sets of facts and seek the same types of relief.

**2. There Has Been No Undue Delay, Bad Faith, or Dilatory Motive and Plaintiff's Motion Is Not Prejudicial or Futile**

Permission to supplement a pleading should be freely granted absent "undue delay, bad faith, dilatory tactics, undue prejudice . . . , or futility." *Quaratino*, 71 F.3d at 66. *See also Chen-Oster v. Goldman*, 251 F. Supp. 3d 579, 593 (S.D.N.Y. 2017) (Torres, J.) (supplemental pleading proper where the "claims in the proposed supplemental pleading arose after Plaintiffs filed their second amended complaint, and Plaintiffs have not engaged in undue delay, bad faith, or dilatory tactics…").

There is no undue delay here: Plaintiff is filing this letter within just weeks of Gelb's recent defamatory and retaliatory statements. Further, only limited additional discovery about the



circumstances of Gelb's making of the new statements is needed, and discovery about the truth or falsity of the underlying content is almost entirely encompassed by existing discovery. Moreover, document discovery remains ongoing and depositions have not yet commenced. To the extent Defendants suffer any prejudice at all, that prejudice is entirely fair and warranted since they invited the new claims by engaging in new tortious and retaliatory conduct, harming Plaintiff by making defamatory and disparaging statements about matters that go to the very heart of issues already being litigated in this case.

Plaintiff's proposed new defamation claims are not futile. While the Court dismissed Plaintiff's original defamation claims based on, *inter alia*, a consideration of Gelb's "subjective belief" about Netrebko's political views, the new statements do not concern Plaintiff's general or past support for the Russian president but instead concern specific, objectively verifiable facts related to the circumstances surrounding her termination by the Met. The Supplemental Complaint plausibly alleges actual malice by alleging Gelb's own contradictory statements and actions and by alleging that Gelb was aware of the falsity of his statements about Netrebko because he was in possession of information that directly contradicted those statements. *See Celle v. Filipino Rep. Enters. Inc*., 209 F.3d 163, 183 (2d Cir. 2000) (actual malice can be established "[t]hrough the defendant's own actions or statements, the dubious nature of his sources, [and] the inherent improbability of the story [among] other circumstantial evidence.")

In particular, Gelb's June and July 2025 interviews to Ukrainian and Austrian press outlets falsely claim that Plaintiff announced her opposition to the invasion of Ukraine only *after* the Met fired her. *See* Supp. Compl. ¶ 6-8 (". . . we fired her. *Later on*, she announced she was against the war;" "Her *later* statement – *a month afterwards* – in which she claimed to be against the war . . . was issued *only after* her dismissal;" "she condemned the war . . . *only after* the Met had fired her."). This chronology matters: in the context of Gelb's statements suggesting that Netrebko's statements were disingenuous and made only to attempt to belatedly salvage her reputation, falsely accusing her of not having opposed the war until *after* the Met fired her causes still further damage to her reputation. As Defendants admit in their Answer, the Met cancelled certain engagements with Netrebko on March 3, 2022, and formally terminated its relationship with Netrebko on March 28, 2022. (ECF Doc. 88, ¶¶ 31, 33). Prior to both of those dates, on February 26 and March 1, Netrebko issued public statements announcing that she was "opposed to this war" and opposed "to this senseless war of aggression . . . [and] calling on Russia to end this war right now." (ECF Doc. 27, ¶ 27, 28). Gelb's new public statements about this chronology are patently false, and he knew they were false. (Supp. Compl., ¶14(a)-(e) (alleging falsity); ¶ 15(a)-15(j) (alleging knowledge of falsity)). The supplemental complaint also alleges that Gelb falsely stated to the press that Netrebko refused to denounce Russian President Vladimir Putin because she had "certain conversations with the Kremlin"—a brand new assertion which Gelb is alleged to have recently fabricated—and because, as she told Gelb, "I stand with my country." (Supp. Compl., ¶ 7). These statements are also untrue and defamatory. (Supp. Compl. ¶ 14(d),(e)). To the extent Gelb claims

to have relied on information provided by sources other than Netrebko, her agents, or her representatives in making this false statement, those sources are alleged to be biased and unreliable, rendering the Kremlin story inherently improbable. (Supp. Compl. ¶ 15(h)-(j)). Each of Gelb's statements is *per se* defamatory and injurious to Netrebko in her professional capacity as they were made by the leader of a prominent opera company in connection with explaining the termination of its professional relationship with Netrebko. (Supp. Compl., ¶ 17).

Plaintiff's proposed retaliation claims are also warranted as a matter of law. She seeks to allege that Defendant Gelb's 2025 statements, and two others made in 2024, constitute unlawful retaliation under the New York State and City Human Rights Laws ("NYSHRL" and "NYCHRL," respectively). *See* N.Y. Exec. Law § 296(7), N.Y.C. Admin. Code § 8-107(7)(i)-(iii). In order "to prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (internal citations omitted). The same standard applies to the NYSHRL retaliation claim. *Arazi v. Cohen Bros. Realty Corp.*, No. 1:20-cv-8837-GHW, 2022 U.S. Dist. LEXIS 56549, at *46 (S.D.N.Y. Mar. 28, 2022). The NYSHRL and NYCHRL state that "filing a complaint" or commencing "a civil action," respectively, are examples of protected activity. N.Y. Exec. Law § 296(7), N.Y.C. Admin. Code § 8-107(7)(iii).

Under these laws, Gelb's 2024 and 2025 statements are retaliatory because his defamatory, disparaging, and harmful public comments would "dissuade a reasonable worker from making or supporting a charge of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)). In the post-employment retaliation context, "impermissible adverse action may be found where, for example, an employer provides an untruthful letter of reference for a former employee . . . , 'blacklists' or otherwise speaks ill of a former employee with retaliatory motive." *Thompson v. Morris Heights Health Ctr.*, 09 Civ. 7239 (PAE) (THK), 2012 U.S. Dist. LEXIS 49165, at *15 (S.D.N.Y. Apr. 6, 2012). The alleged retaliatory statements include the disparaging, untrue statements described above, and also include one in which Gelb publicly criticized another U.S. opera company for engaging Netrebko. (Supp. Compl. ¶ 4, 5). These retaliatory statements discourage other employers from hiring Plaintiff, sully her reputation, and are sufficient to deter a reasonable employee from complaining about discrimination.

We thank the Court for its attention to this matter.

Respectfully submitted,

*/s/ Julie R. Ulmet*

Julie R. Ulmet

Attachment A (Proposed Supplemental Complaint)

cc: All counsel via email and ECF