THE LAW OFFICES OF
# JULIE R. ULMET

October 29, 2025

**<u>By ECF</u>**
The Honorable Ona T. Wang
United States District Court for the Southern District Of New York
500 Pearl Street
New York, NY 10007

   Re: *Anna Netrebko v. Metropolitan Opera Association, Inc., et al.*
      Case No. 23-cv-6857

Dear Judge Wang,

  The undersigned represents Plaintiff Anna Netrebko ("Plaintiff" or "Ms. Netrebko") in the above-referenced matter. Pursuant to the Court's Individual Practice II.b. and Local Rule 37.2, Plaintiff writes to respectfully request a conference with the Court to assist the parties in resolving a discovery dispute. Counsel for the parties participated in a meet and confer via telephone on October 24, 2025, on the issue discussed in this letter. The dispute concerns the deposition of Met employee Gillian Brierley which was previously discussed with the Court at the August 21, 2025 status conference. The fact discovery deadline in this case is January 16, 2026. Despite recent testimony revealing that Ms. Brierley has information that is relevant to Plaintiff's discrimination claims, the Met refuses to make her available for a deposition.

  The Court previously denied Plaintiff's request to obtain responsive documents from Ms. Brierley, but left open the question of whether Plaintiff could take her deposition, (ECF No. 115), explaining that, "[b]ecause this case has gone on for quite some time[,] I do not want this to be the ever-expanding discovery and ever-expanding case." (Aug. 21, 2025 Tr., p. 34-35). The Court directed Plaintiff to proceed with already scheduled depositions and "see what happens" and "what turns up" at them, noting that the question of additional depositions was a "fight for later." (*Id.*). Plaintiff acknowledges that the Court suggested a preference for Plaintiff to first take the depositions of the three scheduled witnesses, but the remaining two witnesses (Peter Gelb and Rule 30(b)(6) corporate representative) will not be deposed until December 8 and 12, 2025, respectively and Plaintiff wanted to raise this dispute concerning Ms. Brierley's deposition as promptly as possible given that discovery closes on January 16, 2026.

  On October 16, 2025, Plaintiff took the deposition of Met employee Michael Heaston, one of three witnesses that Defendants have agreed to make available for deposition. At the August 21 conference, the Court referred to Mr. Heaston as a "principal" person with knowledge about relevant issues in this case. (Aug. 21, 2025 Tr. at 34). Testimony adduced at Mr. Heaston's deposition demonstrated that Ms. Brierley, Assistant Director - Marketing and Communications, is another principal person who had critical involvement in decisions related to external Met



communications and publicity surrounding Plaintiff's termination, including: external cast change announcements, whether the Met deviated from its usual practices in publicizing certain events surrounding Plaintiff's termination and replacement with a Ukrainian performer, research concerning Russian performers subsequent to the invasion of Ukraine, meetings with the Board of Directors, and meetings with Peter Gelb, to whom Brierley directly reported. Mr. Heaston's responsibilities did not overlap with Ms. Brierley and he pointed directly to her as a source of information regarding these topics.

More specifically, Mr. Heaston testified that Ms. Brierley heads the Marketing and Communications Team, reports directly to Mr. Gelb, and, in turn, her direct reports include the press director and head of editorial, among others. (31:6-35:4). Further, Ms. Brierley's team was involved in publicity decisions and strategy concerning the Met's February 27, 2022 announcement that it would cease doing business with artists and institutions that supported Putin (130:7, 18), and relatedly, her team conducted research on other artists' connections to Putin (218:16). He also testified that Ms. Brierley was involved in decision-making about the Met publicizing its decision to terminate Ms. Netrebko (142:20), which occurred contemporaneously with its communication of that decision to Ms. Netrebko.

Demonstrating the centrality of evidence about the Met's publicity to Ms. Netrebko's national origin discrimination claims, Mr. Heaston further testified that he believed that there was a correlation between Ms. Netrebko's status as the most prominent Russian opera singer in the world and Peter Gelb's view that she was a "symbol" of the Russian cause that Mr. Gelb opposed, and similarly, that Mr. Gelb viewed Ms. Monastyrska, the Ukrainian artist who replaced Ms. Netrebko, as a "symbol" of the Ukrainian cause that he supported. (179:4-19). On this topic, Ms. Brierley and her team were involved, among other things, in the process of publicizing a performance in which Ms. Monastyrska was wrapped in a Ukrainian flag. (180:3-184:1). In contrast, Mr. Heaston could not provide testimony on the process, or what was considered. *Id.*

Under the Federal Rules, "A party may, by oral questions, depose *any* person," Fed. R. Civ. P. 30(a)(1) (emphasis added), and Rule 26 provides that "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." (Rule 26(b)(1)). Under federal law, "plaintiffs have no burden to show that the deponents have any relevant knowledge." *Scott v. Chipotle Mexican Grill, Inc*., 306 F.R.D. 120, 122 (S.D.N.Y. 2015). Indeed, courts have explained that "it is exceedingly difficult to demonstrate an appropriate basis for an order barring the taking of a deposition." *Naftchi v. New York Univ. Med. Ctr*., 172 F.R.D. 130, 132 (S.D.N.Y. 1997) (analyzing former text of Rule 26(b)(1)). Courts have directed depositions, even of an apex witness, where "there is little doubt that [the witness] has relevant knowledge." *Chevron Corp. v. Donziger*, No. 11 CIV. 0691 LAK JCF, 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013) (permitting deposition of Chevron CEO to proceed).

2

There is "little doubt" that, as set forth above, Ms. Brierley has relevant knowledge and, accordingly, Plaintiff should be permitted to take her deposition. The Met has flatly refused to make Ms. Brierley available despite Mr. Heaston's testimony, providing no basis for its refusal nor demonstrating that Defendant—an organization with assets of more than half a billion dollars[1]—will be overly burdened by one additional deposition. Ms. Brierley was the head of the team responsible for marketing, publicity and external announcements about Ms. Netrebko and the Met's replacement of her with a Ukrainian artist. Her testimony is relevant to the issue of whether the manner in which the Met publicized Ms. Netrebko's termination provides evidence of a discriminatory motive. ECF No. 108, Order, at 7 (considering Plaintiff's allegation that the Met promoted the fact that it replaced her with a Ukrainian artist as supporting an inference of national origin discrimination). *See, e.g.*, *Menaker v. Hofstra*, 935 F.3d 20, 32 n. 39 (2d Cir. 2019) (employer whose conduct favoring one sex over the other… in order to avoid … bad publicity, has practiced sex discrimination.)

The Met cannot reasonably contend that Ms. Brierley's testimony would be cumulative or duplicative—she and Mr. Heaston had distinct roles and Mr. Heaston could not testify about subject matter exclusively within Ms. Brierley's personal knowledge. Moreover, there is no basis to preclude Ms. Brierley's deposition on the ground that the Met's 30(b)(6) witness may give cumulative or duplicative testimony. *See In re Evenstar Master Fund SPC*, 2021 WL 3829991, at *16 (S.D.N.Y. Aug. 27, 2021) ("[C]ourts within this Circuit permit Rule 30(b)(6) depositions even when the anticipated testimony would 'essentially duplicate information which has already been stated in an individual deposition'") (citation omitted). Ms. Brierley's testimony would not be cumulative or duplicative of Mr. Gelb's testimony because Ms. Brierley's role differs from Mr. Gelb's in that she is a person from whom he sought information and recommendations with respect to publicity around the Russia/Ukraine invasion, Ms. Netrebko's termination and replacements, and research concerning other Russian artists. Mr. Gelb is further testifying in his capacity as an individual defendant as well as a Met employee with personal knowledge.

For the above-stated reasons, Plaintiff respectfully requests an order from the Court allowing her to take Gillian Brierley's deposition. Defendants can proffer no reason why Plaintiff should be precluded from taking Ms. Brierley's deposition before trial or why the deposition cannot be scheduled to take place in the six weeks prior to Mr. Gelb's deposition, particularly since—like Mr. Heaston—Ms. Brierley has information related to the process and practices in which the Met engaged vis-à-vis publicity surrounding its performers, and the more particular circumstances surrounding Ms. Netrebko's termination and replacement. If Plaintiff is not permitted to take Ms. Brierley's deposition, the Met should be precluded from identifying her as a trial witness.

---

[1] FY24 Financial Statements, available at https://www.metopera.org/about/annual-reports/.

3



          Respectfully submitted,

          */s/ Julie R. Ulmet*

          Julie R. Ulmet
          *Counsel for Plaintiff*

cc:    Lloyd B. Chinn, Howard Z. Robbins, Hayden F. Bashinski (Proskauer Rose LLP)
       Elior Shiloh, Ariadne Panagopoulou, Daniel Axelrod (Lewis Brisbois Bisgaard & Smith LLP)
       *Counsel for Defendants* (By Email and ECF)
       Kara Gorycki, *Counsel for Plaintiff* (By Email and ECF)