

Ariadne Panagopoulou
7 World Trade Center, 11th Floor
New York, NY 10007
Ariadne.Panagopoulou@lewisbrisbois.com
Direct: 212.232.1362

November 3, 2025

***By ECF***
Honorable Ona T. Wang
United States District Court for the Southern District Of New York
500 Pearl Street
New York, NY 10007

        Re:    *Anna Netrebko v. Metropolitan Opera Association, Inc., et al.*
                 Case No. 23-cv-6857

Dear Judge Wang,

We represent Defendants in the above-referenced matter. In accordance with Your Honor's Rules, we write in response to Plaintiff's letter, dated October 29, 2025, which seeks to compel the deposition of third-party witness Gillian Brierley. This issue was already adjudicated on August 21, 2025 following which Your Honor denied Plaintiff's request. *See* August 22, 2025 Order. Plaintiff's letter represents, in reality, an untimely motion for reconsideration. In any event, Your Honor's prior ruling was proper, and no new evidence has come to light, including through the deposition testimony of Met employee, Michael Heaston, that now renders the deposition of Ms. Brierley appropriate.

**Background**

On June 23, 2025, Plaintiff filed a letter requesting, *inter alia*, that Defendants produce two Met employees that worked at the Met's Marketing & Communications department, including Gillian Brierley, for a deposition. *See* Dkt. No. 98. On August 21, 2025, Your Honor scheduled a hearing the purpose of which was to hear oral arguments on Plaintiffs' request.

After hearing arguments from both parties, Your Honor denied Plaintiff's request holding that "based on counsel's representation that these three custodians, these three individuals [including Brierley] would have had to pass any decision through Mr. Gelb, would have had to get approval for any public statement through Mr. Gelb, and you have Mr. Gelb's side of those documents and those communications, that's sufficient." Hearing Tr. 33-17:25.[1] As to depositions in particular, Your Honor held that "you get better evidence from just deposing Mr. Gelb and looking at Mr. Gelb's communications and his statements. That's what this case is about." *Id*. 33:9-11. The following day,

---

[1] The transcript of the August 21, 2025 hearing is annexed hereto as **Exhibit A**.

Honorable Ona T. Wang
November 3, 2025
Page 2

Your Honor issued an Order stating, *inter alia*, "Plaintiff's request for additional ESI discovery and depositions as outlined in ECF 98 is DENIED, for the reasons stated on the record." Dkt. No. 115.

On October 16, 2025, Plaintiff deposed Michael Heaston, Deputy General Manager at the Met. Following such deposition, Plaintiff's counsel, Julie Ulmet, Esq., reached out to us informing us that she was seeking to renew her request to depose Ms. Brierley based on certain representations Mr. Heaston had made in the course of his deposition testimony. We responded via letter on October 24 (*see* **Exhibit B**) and held a subsequent meet and confer with Ms. Ulmet on the same day. In our letter, as well as during our meet and confer, we pointed out to Ms. Ulmet that Your Honor had already ruled on the issue of Ms. Brierley's deposition. Additionally, we stated that, while we would not be producing Ms. Brierley for a deposition at the present time, we would be willing to re-visit this matter following the depositions of Defendant Peter Gelb and the Met's 30(b)(6) witness. *See id*. p. 2.

Having disregarded this Court's prior Order, Plaintiff has now improperly filed her current application claiming, erroneously, that this Court "left open the question of whether Plaintiff could take [Brierley's] deposition." Plaintiff's Letter, p. 1.

**<u>Michael Heaston's Deposition Testimony Does Not Alter This Court's Order</u>**

In her letter, Plaintiff claims that Brierley is a "principal person who had critical involvement in decisions related to external Met communications and publicity surrounding Plaintiff's termination." Plaintiff's Letter pp. 1-2. Such statement is plainly not true and not supported by Mr. Heaston's testimony. As previously represented during the hearing before Your Honor, Brierley: (1) reports to and is directed by Peter Gelb; (2) did not have authority to engage or terminate artists on behalf of the Met, (2) did not make the decision to terminate Netrebko, and (3) did not have authority to make any representations to public or the press regarding Netrebko's termination without Gelb's approval. Though Brierley, under Gelb's directions, may have been involved in drafting statements to the press involving Netrebko, such statements were under the direction of and approved by Gelb before being released.

Nothing stated by Mr. Heaston during his deposition contradicts the statements we made to the Court. To the contrary, he confirmed that Brierley reports directly to Gelb and that the press team, including Brierley, "would be meeting regularly also with Peter [Gelb] about the publicity and marketing and anything press related on a very regular basis". Heaston Tr. 35:2-4, 143:5-10.[2] Heaston, in fact, could not identify a single instance when Brierley made statements to the press independently from Gelb. *Id*. 143:19-24 ("Q. Do you have an understanding of [] what occasions Mr. Gelb would speak directly to media as opposed to the press director speaking directly to media? A. No. That's sort of outside my area of -- what I deal with").

---

[2] Relevant excerpts from Heaston's deposition transcript are annexed hereto as **Exhibit C**.

166057433.2

Honorable Ona T. Wang
November 3, 2025
Page 3

Plaintiff cites "130:7, 18" of Heaston's Transcript for the proposition that "Ms. Brierley's team was involved in publicity decisions and strategy concerning the Met's February 27, 2022 announcement that it would cease doing business with artists and institutions that supported Putin" but a review of that excerpt of the transcript reveals just the opposite. *See id.* ("I'm not in press team meetings, so I don't know what they discussed"). *See also id.* 130 ("Q. Are you aware of any conversations about the Met publicizing the fact that Ms. Netrebko had been replaced by a Ukrainian soprano? A. Not that I remember. Q. Are you aware of any ultimate decisions about publicizing the fact that Ms. Netrebko had been replaced by a Ukrainian soprano? A. No, I wasn't informed about any specific decisions about that.")

As to Plaintiff's contention that Brierley's "team conducted research on other artists' connections to Putin" (Plaintiff's Letter, p. 2), this is, again, a misrepresentation of Heaston's testimony. Heaston testified that "[i]t's possible that marketing or press would have had to look into things, especially if external sources had sent us pictures or notices about artists that they would have had to look in and verify." Heaston Tr. 218:16-20. Importantly, such research was done pursuant to Gelb's directives. *Id.* 218:7-10 ("When Peter [Gelb] would ask about something like that [i.e. an artist's allegiance to Putin] was that perhaps there was his own research or own things he had been looking at").

Equally false is Plaintiff's representation that "Ms. Brierley was involved in decision-making about the Met publicizing its decision to terminate Ms. Netrebko." Plaintiff's Letter, p. 2. In response to a question asking "which colleagues would have been involved" in publicity decisions surrounding Netrebko's termination, Heaston answered as follows: "This would be, again, **conjecture on my part**, but it would have made sense for it to involve Gillian Brierley, Lee Abrahamian, and I'm not sure beyond that who else might have." Heaston Tr. 142:13-16. (emphasis added). Heaston then elaborated that both Abrahamian and Brierley "would be meeting regularly also with Peter [Gelb] about the publicity and marketing and anything press related on a very regular basis." *Id.* 143:7-10.

Finally, as to Plaintiff's contention that "Ms. Brierley and her team were involved…in the process of publicizing a performance in which Ms. Monastyrska was wrapped in a Ukrainian flag" (Plaintiff's Letter, p. 2), Heaston specifically testified that he did not know who would have been involved in that but that Gelb "would have had to approve that." Heaston Tr. 181:9-21. *See also id.* 182:6-9 ("Q: And do you know if the press team was involved in that decision-making? A: No, I don't know if they participated in deciding that.")

.   .   .

Plaintiff has presented absolutely no basis for changing its decision. Brierley was, at all times, directed by Peter Gelb. She did not make the decision to terminate Netrebko or (any other artist). This Court properly denied Plaintiff's prior request to depose Brierley, and Heaston's testimony does not provide any grounds for disturbing such ruling. Plaintiff, by her own admission, also failed to heed the Court's direction to take Gelb's deposition prior to raising any further disputes with the Court regarding Brierley. Plaintiff's Letter p. 1. For these reasons, Plaintiff's application should be denied.

Honorable Ona T. Wang
November 3, 2025
Page 4

Respectfully submitted,

*Ariadne Panagopoulou*

Ariadne Panagopoulou of
LEWIS BRISBOIS BISGAARD & SMITH LLP

cc:      All Counsel (via ECF)

166057433.2