UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X
ANNA NETREBKO,                                  :        Case No. 23-cv-6857

                Plaintiff,          :

          v.                                 :        **SUPPLEMENTAL**
                                                        :        **COMPLAINT AND DEMAND**
                                                          :        **FOR A JURY TRIAL**

METROPOLITAN OPERA ASSOCIATION,      :
INC. d/b/a THE METROPOLITAN OPERA and
PETER GELB, in his professional and individual  :
capacities,                                     :

                Defendants.         :
---------------------------------X

       Pursuant to Federal Rule of Civil Procedure 15(d), Plaintiff Anna Netrebko ("Netrebko") by and through her counsel, The Law Offices of Julie R. Ulmet and Nesenoff & Miltenberg, LLP, files this Supplemental Complaint alleging causes of action under New York State and City law against Defendants Metropolitan Opera Association, Inc. d/b/a The Metropolitan Opera (the "Met") and Peter Gelb ("Gelb"), in his professional and individual capacities (collectively, "Defendants"), arising after the Second Amended Complaint was filed. Plaintiff incorporates by reference the allegations of the Second Amended Complaint (ECF Doc. No. 27; "SAC") and alleges as follows.

    **A. After the Filing of this Action, Gelb and the Met Waged A Defamatory—and Retaliatory—Public Smear Campaign Against Netrebko**

       1.     Subsequent to Plaintiff's commencement of this litigation, Gelb and the Met started a renewed public campaign to defame Netrebko and disparage her in retaliation for asserting her rights and instituting this litigation against them.

       2.     This renewed campaign—grounded in verifiably false statements—was intended to inflict further harm on Netrebko's career by publicly dissuading other opera companies from

1

employing Netrebko, positioning the Met as a moral champion of Ukraine, and falsely portraying Netrebko as emblematic of the Putin regime.

3. The statements were strategically made to media outlets in Ukraine and in Netrebko's country of residence, Austria, in order to maximize their impact on Netrebko, including the potential for serious threats against Netrebko's physical safety. The timing of the statements also suggest that Defendants intended to capitalize off of their false narrative about Netrebko while distracting from their own failings during the Met's most recent opera season. The statements were, as Defendants reasonably expected them to be, reported on and reprinted by American and international news media.

4. (a) In a May 13, 2024 interview with French classical music magazine *Diapason*, titled, "Peter Gelb: où va le Met?," Gelb stated "S'agissant de Netrebko, pour l'avoir beaucoup fréquentée pendant les saisons où elle a été présente au Met plus que partout ailleurs, je connais très bien son opinion sur Poutine et la guerre. Quand je lui ai posé un ultimatum, elle m'a clairement dit: 'je soutiens mon pays' . . .Pour autant, les artistes russes sont les bienvenus au Met, dès lors qu'ils ne se prononcent pas publiquement en faveur de Poutine. Netrebko a engagé des poursuites contre le Met, et contre moi personellement. Mais je crois que cette action n'a aucune chance d'aboutir et qu'elle perdra," or, translated into English, "Regarding Netrebko, having seen her a lot during the seasons when she performed at the Met more than anywhere else, <u>I know her opinion on Putin and the war very well. When I gave her an ultimatum, she clearly told me: 'I support my country.'</u> . . . However, Russian artists are welcome at the Met, as long as they do not

2

publicly speak out in favor of Putin. Netrebko filed suit against the Met, and against me personally. But I believe that this action has no chance of succeeding and that she will lose."[1]

   (b) On May 14, 2024, Netrebko, through her manager, informed *Diapason* that the article contained inaccurate statements, including statements similar to those Netrebko had alleged to be defamatory in this litigation, and requested that *Diapason* make certain corrections to the May 13, 2024 article, pursuant to the French "Right of Reply" laws.

   (c) In response, *Diapason* reproduced the right of reply in a subsequent print edition of the magazine.

5. (a) In a July 31, 2024 *New York Times* article titled, "Anna Netrebko, Shunned in U.S. Over Putin Support, Will Sing in Palm Beach," Gelb stated that the Palm Beach Opera had made an "unfortunate decision" to hire Netrebko and that Netrebko made a "disingenuous effort to distance herself from the Russian war effort."[2]

   (b) On August 4, 2024, Netrebko, through counsel, sent Defendants a cease and desist letter objecting that Gelb's statements were retaliatory and interfered with Netrebko's potential relationships with other opera companies, and she demanded that Defendants cease and desist from making further disparaging, retaliatory, or tortious public statements about Netrebko and her actual and potential business partners.

6. (a) In a June 26, 2025 *Ukrinform* interview titled, "Peter Gelb, General Manager of the Metropolitan Opera: When the Putin regime is trying to destroy a nation, only supporting Ukraine is right," Gelb stated "I also immediately gave our leading star, Anna Netrebko, <u>the choice</u>

---

[1] Emmanuel Dupuy, "Où va le Met?" *Diapason*, No. 733, p. 18, 20 (May 13, 2024) (print edition).
[2] Javier C. Hernandez, "Anna Netrebko, Shunned in U.S. Over Putin Support, Will Sing in Palm Beach," *N.Y. Times* (July 31, 2024), https://www.nytimes.com/2024/07/31/arts/music/anna-netrebko-palm-beach.html.

of either disavowing Putin and the war, or being fired by the Metropolitan. She chose, and we fired her. Later on, she announced she was against the war. But she only did this to show that she should be given away [a way] back, if not [to] the Metropolitan, [thank to] other opera companies."[3] *Ukrinform* is Ukraine's national news agency.

(b)     On June 27, 2025, Netrebko, through counsel, sent Defendants a cease and desist letter objecting that Gelb's statements were false and threatened Netrebko's personal safety, and she demanded that Defendants retract the statements.

7.     In a June 28, 2025 *LB.ua* interview titled "Metropolitan Opera Director Peter Gelb: 'I do not wish to maintain cultural ties with murderers,'" Gelb stated "Following extensive discussions with Anna Netrebko, our star performer at the time, I dismissed her, as she refused to publicly distance herself from the Russian regime" and ". . . it is important to emphasise that I gave her the opportunity to publicly distance herself from Putin. She told me she could not. I believe she had certain conversations with the Kremlin. As I understand it, she returned to me and said, 'I stand with my country.' That is when I dismissed her. Her later statement – a month afterwards – in which she claimed to be against the war was, in my opinion, insincere. It was issued only after her dismissal. From a legal perspective, I believe that statement was not genuine. I do not believe she meant it." In the same interview, Gelb stated, "I maintained that I had dismissed her for moral reasons, and that if the arbitrator required us to pay, we would do so – but only under legal compulsion. . . . Afterwards, she filed a separate lawsuit. This is an entirely new legal case, and it is

---

[3] Ivan Kosiakin, "Peter Gelb, General Manager of the Metropolitan Opera: When the Putin regime is trying to destroy a nation, only supporting Ukraine is right," *Ukrinform* (June 26, 2025), https://www.ukrinform.net/rubric-society/4008719-peter-gelb-general-manager-of-the-metropolitan-opera.html.

4

still ongoing. She brought the case on several counts – not only against the MET, but against me personally."[4]

8. In a July 13, 2025 interview with the Austrian news outlet *Der Standard*, "Met-Chef: 'Gergiev ist eine Art künstlerischer Stellvertreter Putins,'" or translated into English, "Met Director: 'Gergiev is a kind of artistic representative of Putin,'" Gelb stated, "Aus meiner Sicht verurteilte sie den Krieg aus reiner Zweckmäßigkeit und erst, nachdem die Met sie entlassen hatte. Ich glaube, es gibt zahlreiche Beispiele für ihre Sympathie gegenüber Putin und seiner Ideologie," or, translated into English, "In my view, she condemned the war purely out of expediency and only after the Met had fired her. I believe there are numerous examples of her sympathy toward Putin and his ideology."[5]

9. Gelb made the statements set forth in Paragraphs 4 through 8 in the context of on-the-record interviews with reporters at major news outlets and classical music publications. Thus, he made the statements with the knowledge that they would be published and widely disseminated, and each statement was published and widely disseminated.

10. Gelb's 2024 and 2025 statements in paragraphs 4 through 8, carried by international news outlets and disseminated by U.S. and international news outlets and websites, were designed to harm Netrebko's international career, which she has worked tirelessly to maintain after effectively being banished from large opera houses in the United States due to the Met's publicized termination of her, and ensure that she remained unable to return to a career in the United States.

---

[4] Sonya Koshkina: Kateryna Hladka: Kseniia Bilash, "Metropolitan Opera Director Peter Gelb: 'I do not wish to maintain cultural ties with murderers,'" LB.ua (June 28, 2025), https://en.lb.ua/news/2025/06/28/36274_metropolitan_opera_director_peter.html.

[5] Ljubisa Tosic, "Met-Chef: 'Gergiev ist eine Art künstlerischer Stellvertreter Putins,'" *Der Standard* (July 13, 2025), https://www.derstandard.at/story/3000000279234/met-chef-gergiev-ist-eine-art-kuenstlerischer-stellvertreter-putins.

5

11. Gelb made the 2025 statements—over three years after the Met terminated its relationship with Netrebko— at a time when Gelb and the Met faced decreased ticket sales, criticism for modern performances, concern for its financial future, and lawsuits by other artists.[6] His renewed statements are a transparent attempt to capitalize off of his prior attacks on Netrebko, garner publicity for the Met, and distract from the Met's financial, critical, and other issues.

12. Gelb's direct references to this lawsuit in the recent disparaging and defamatory interviews show that they are an attempt to intimidate, and retaliate against, Netrebko for pursuing her claims against Defendants.

13. Gelb's decision to unnecessarily defame Netrebko in an interview to Ukraine's national news agency—during a time when Ukraine and Russia are engaged in continuing and escalating conflict—can only have been intended to intimidate Netrebko and place her in harm's way. The dissemination of the statements throughout Ukraine and beyond increased the possibility of threats of physical harm to Netrebko as she performs around the world.

14. Gelb's statements alleged in paragraphs 4 through 8 contained false assertions. In particular,

---

[6] Ronald Blum, "Met Opera attendance dropped in spring as tourism fell, coinciding with immigration crackdown," *AP* (June 13, 2025), https://apnews.com/article/metropolitan-opera-box-office-d1ff68d7ac5703d18e225c8525060bcd; Kelly Jane Torrance, "Metropolitan Opera's Peter Gelb blames Trump for sales slump — but needs to look in the mirror ," *New York Post* (July 2, 2025), https://nypost.com/2025/07/02/opinion/metropolitan-operas-peter-gelb-blames-president-trump-for-sales-slump-but-needs-to-look-in-the-mirror/; James D. Walsh, "The Most Generous Man in New York Before his mysterious death, Matthew Christopher Pietras donated millions to the Met and the Frick. It was stolen," *Intelligencer*, (July 29, 2025), https://nymag.com/intelligencer/article/matthew-christopher-pietras-nyc-courtney-ross-gregory-soros.html; Javier Hernandez, "Singer Sues Met Opera Over Firing for Post-Pregnancy Vocal Problems," *N.Y. Times* (April 9, 2025), https://www.nytimes.com/2025/04/09/arts/music/anita-rachvelishvili-sues-met-opera.html.

(a) The Met did not condition Netrebko's continued relationship with the Met on asking her to "disavow . . . the war," and in February and March 2022 public statements, Netrebko did disavow the war.

(b) Netrebko made public statements opposing and condemning the war in Ukraine on February 25, February 26, and March 1, 2022, prior to her termination from the Met, as described in paragraphs 25, 27, and 28 of the SAC.

(c) Netrebko's public statements in February and March 2022 "publicly distance[d] her[] from the Russian regime."

(d) ~~Netrebko did not have conversations with "the Kremlin" related to the invasion, Netrebko's statements concerning the invasion, or any other topic since the invasion.~~

~~(e)~~(d)  Netrebko did not tell Gelb, "I support my country" or "I stand with my country" in relation to Russia's invasion of Ukraine.

15.  (a) Gelb made each of the statements in Paragraphs 4 through 8 even though he knew that the statements were false.

(b) Gelb knew it was false to say that Netrebko had not condemned the war before the Met terminated her because, on March 1, 2022, he reviewed Netrebko's March 1 public statement stating that she was "opposed to this senseless war of aggression and was "calling on Russia to end this war right now," and Gelb responded to her statement by telling her then-manager Neuhoff, by text message, that it was not sufficient and she needed to specifically "call upon Putin" to end the war.

(c) Gelb knew it was false to say that Netrebko had not condemned the war before the Met terminated her because, on March 1, 2022, he reviewed Netrebko's March 1 public

7

statement and told Neuhoff by email that he "appreciated her [Netrebko's] most recent message denouncing the war."

(d) Gelb knew it was false to say that Netrebko had not condemned the war before the Met terminated her because, on March 1, 2022, he reviewed Netrebko's March 1 public statement and indicated that he understood the statement to express that Netrebko opposed to the war, telling Neuhoff by email that it was not sufficient because "it needs to be clear to the public that <u>not only is Anna against the war</u>, but that she is against the person who is waging it."

(e) Gelb knew it was false to say that the Met had conditioned Netrebko's continued relationship with the Met on "<u>publicly distanc[ing]</u> herself from the <u>Russian regime</u>" because Gelb was aware that Netrebko <u>had</u> distanced herself from the Russian regime by publicly opposing the Russian regime's actions connected with the invasion of Ukraine.

(f) Gelb knew it was false to say that only after Netrebko was fired by the Met did she announce that she was "<u>against the war</u>" because in early March 2022, he acknowledged to colleagues by email that prior to her firing, she had "<u>posted [an] anti-war statement</u>."

(g) Gelb knew that it was false to say that Netrebko did not denounce the war until after she was terminated because in the course of this litigation, he has had occasion to review and recollect the chronology and details of events that took place in 2022.

(h) ~~Gelb knew it was false to say that Netrebko did not condemn Putin due to having "certain conversations with the Kremlin," because in March 2022 he learned that the reason she did not make the Met's demanded statement was because she was "too scared" to make the statement. At the time, Gelb considered, credited, and criticized this concern, telling Netrebko, through Neuhoff, by text message, that she should be scared of the harm to her professional reputation instead of being scared of Putin.~~

8

~~(i)    Gelb fabricated the assertion that Netrebko had "certain conversations with the Kremlin," an assertion for which he had no evidence and which he never previously mentioned or signaled a belief in to Netrebko's representatives or his own colleagues at the Met, and to the extent he claims to have relied on accounts related to him by others, those sources were biased and unreliable, rendering his statements inherently improbable.~~

~~(j)    Gelb could not have reasonably believed that Netrebko had "conversations with the Kremlin" leading her to refuse to denounce Putin because she had decided to "stand with [her] country" because Gelb closely reviewed her multiple public statements which denounced the Russian government and clearly opposed the Russian government's actions in Ukraine.~~

16.    (a)    Gelb made each of the statements in Paragraphs 4 through 8 because he wanted to promote the business of the Met by developing its reputation as an internationally important supporter of Ukraine and opponent of Russia.

(b)    Gelb made the statements in Paragraphs 4 through 8 to profit from Netrebko's name and reputation and stir up controversy in order to promote the business of the Met and damage Netrebko's career in the United States and internationally.

(c)    Gelb made the statements in Paragraphs 4 through 8 to garner publicity for the Met and distract from public criticisms of the Met's financial and artistic performance.

(d)    Gelb made the statements in Paragraphs 4 through 8 despite having been put on notice by this lawsuit and by one or more cease and desist letters that his statements were false and injurious.

(e)    Gelb deliberately disregarded publicly available evidence, and evidence in Defendants' possession, that directly contradicted his statements in Paragraphs 4 through 8.

9

  (f) Gelb made the statements in Paragraphs 4 through 8 because Netrebko commenced this civil action against Defendants.

  (g) Gelb made the statements in Paragraphs 4 through 8 to dissuade other employees, artists, and contractors from opposing discrimination or unlawful policies and conduct by Gelb and the Met.

17. Gelb's statements injured Netrebko in her profession because, among other things, they were made by the leader of a prominent opera company in connection with explaining the termination of its professional relationship with Netrebko.

18. Gelb's statements in Paragraphs 4 through 8 caused Netrebko (a) emotional distress, (b) physical suffering, (c) damage to her professional reputation, including by discouraging and causing other opera companies, concert promoters, and arts institutions to refrain from contracting with Netrebko, and (d) harm to her reputation with audiences, including by encouraging protests of her performances.

**ELEVENTH CAUSE OF ACTION**
**Defamation (Post-Complaint)**
*Against All Defendants*

19. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

20. Gelb and the Met made public statements, as set forth in Paragraphs 6 through 8 above. Each of these statements was defamatory *per se* because each was a statement of fact which exposed Netrebko to public hatred, ridicule, contempt, or disgrace, and injured Netrebko's career and professional reputation.

21. The public statements clearly refer to Netrebko and are false and misleading.

22. Gelb and the Met acted with actual malice because they made these defamatory statements about Netrebko with knowledge of their falsity or with reckless disregard of the truth or falsity of the statements.

23. As a direct and proximate cause of the publication of Gelb's and the Met's defamatory statements, Netrebko has suffered and continues to suffer monetary, reputational, and emotional damages.

24. Defendants intended to injure Netrebko through Gelb's and the Met's statements, and acted with common law malice, warranting an award of punitive damages.

25. Defendants also acted with disinterested malevolence, warranting an award of Plaintiff's attorneys' fees and costs.

26. In light of Gelb's and the Met's continuous campaign of defamation against Netrebko, lasting more than three years with no end in sight, damages are insufficient to remedy the harm that has occurred to Netrebko's reputation. For this reason, the Court should issue an injunction requiring Gelb and the Met to retract the false and defamatory statements that they made about Netrebko and to issue a public statement which corrects the false statements detailed in Paragraphs 6 through 8.

### TWELFTH CAUSE OF ACTION
**Retaliation in Violation of the New York State Human Rights Law**
*Against All Defendants*

27. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

28. Plaintiff engaged in protected activity by commencing this litigation on or about August 4, 2023.

29. By the actions alleged in Paragraphs 4 through 8 above, Defendants took an adverse employment action against Plaintiff.

11

30. Defendants took the adverse actions against Plaintiff alleged in Paragraphs 4 through 8 because she engaged in legally protected activities and to retaliate against Plaintiff for taking such legally protected actions, in violation of N.Y. Exec. Law § 296(7).

31. As a direct and proximate result, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income for which Plaintiff is entitled to an award of damages.

32. As a direct and proximate result, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, and emotional pain and suffering for which Plaintiff is entitled to an award of damages.

33. As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of monetary damages and other relief, in addition to costs and reasonable attorneys' fees pursuant to N.Y. Exec. Law § 297(10) and punitive damages pursuant to § 297(4)(c).

**THIRTEENTH CAUSE OF ACTION**
**Retaliation in Violation of the New York City Human Rights Law**
*Against All Defendants*

34. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

35. Plaintiff engaged in protected activity by commencing this litigation on or about August 4, 2023.

36. By the actions alleged in Paragraphs 4 through 8 above, Defendants took an adverse employment action against Plaintiff.

37. Defendants took the adverse actions against Plaintiff alleged in Paragraphs 4 through 8 because she engaged in legally protected activities and to retaliate against Plaintiff for taking such legally protected actions, in violation of N.Y. City Admin. Code § 8-107(7).

38. As a direct and proximate result, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income for which Netrebko is entitled to an award of damages pursuant to N.Y. City Admin. Code § 8-502(a) and reasonable attorneys' fees and costs pursuant to N.Y. City Admin. Code § 8-502(g).

39. As a direct and proximate result, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, and emotional pain and suffering for which Plaintiff is entitled to an award of damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Anna Netrebko respectfully requests the following relief from the Court:

A. On Plaintiff's Eleventh Cause of Action for Defamation (Post-Complaint), an award of monetary damages to be determined at trial for reputational injury, emotional distress, pain and suffering, and humiliation, and attorneys' fees and costs, and punitive damages.

B. On Plaintiff's Twelfth and Thirteenth Causes of Action for Retaliation, an amount of damages to be determined at trial for Plaintiff's severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering, monetary and/or economic damages, and attorneys' fees and costs, and punitive damages.

C. Such other and further relief as the Court may deem just and appropriate.

## JURY DEMAND

Plaintiff Anna Netrebko hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

_____/s/ Julie R. Ulmet_____
Julie R. Ulmet
THE LAW OFFICES OF JULIE R. ULMET
417 Grand St., #1804
New York, NY 10002
Tel (646) 396-0055
julie@ulmetlaw.com

  -and-

Kara L. Gorycki
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, 5th Floor
New York, New York 10001
(212) 736-4500
kgorycki@nmllplaw.com

*Counsel for Plaintiff Anna Netrebko*

DATED:  August 12, 2025