

Ariadne Panagopoulou
7 World Trade Center, 11th Floor
New York, NY 10007
Ariadne.Panagopoulou@lewisbrisbois.com
Direct: 212.232.1362

March 18, 2026

***By ECF***

Honorable Ona T. Wang
United States District Court for the Southern District Of New York
500 Pearl Street
New York, NY 10007

Re:  *Anna Netrebko v. Metropolitan Opera Association, Inc., et al.*
     Case No. 23-cv-6857

Dear Judge Wang,

We represent Defendants in the above-referenced matter. Defendants respectfully submit this letter motion seeking to compel production of three narrow categories of discovery: (1) complete medical records and corresponding releases supporting Plaintiff's theory of damages; (2) targeted ESI searches of Plaintiff's WhatsApp communications; and (3) targeted searches of Plaintiff's Instagram direct messages. The parties met and conferred in good faith on these issues multiple times, both via letter and phone, but remain at an impasse.

Plaintiff has affirmatively put these matters at issue and is now stonewalling Defendants' ability to test them. The Second Amended Complaint ("SAC") alleges that the Met discriminated against her on the basis of sex and national origin by terminating its relationship with her. Specifically, she claims that Defendants' stated reasons for such termination – namely, her failure to denounce Vladimir Putin – were "false" and "pretextual" because she "was not a political or ideological supporter of Putin", and because she had already issued public statements via Instagram opposing Russia's war in Ukraine. SAC ¶¶ 25, 27–28, 30–35, 49. Plaintiff alleges that Defendants' actions caused her "emotional distress and physical suffering" (*id*. ¶ 84) and she seeks damages for "severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering." *Id*. ¶¶ 99, 110, 121, 132.

Defendants' position is that the Met acted on legitimate, non-discriminatory business reasons: in the immediate aftermath of Russia's invasion of Ukraine, Plaintiff—whom Defendants understood to have been a staunch supporter of the Putin regime—refused to make the clear denunciation of Putin that the Met viewed as necessary to continue presenting her. Plaintiff's contemporaneous views on Putin and the war, the extent to which her public statements reflected her actual position, and the

ARIZONA • CALIFORNIA • COLORADO • CONNECTICUT • DELAWARE • FLORIDA • GEORGIA • ILLINOIS • INDIANA • KANSAS • KENTUCKY • LOUISIANA

MARYLAND • MASSACHUSETTS • MINNESOTA • MISSISSIPPI • MISSOURI • NEVADA • NEW JERSEY • NEW MEXICO • NEW YORK • NORTH CAROLINA

OHIO • OREGON • PENNSYLVANIA • RHODE ISLAND • TENNESSEE • TEXAS • UTAH • VIRGINIA • WASHINGTON • WASHINGTON D.C. • WEST VIRGINIA

Honorable Ona T. Wang
March 18, 2026
Page 2

nature and cause of the physical and emotional injuries she now claims go to the very core of the case. Yet, Plaintiff refuses targeted discovery into the very subjects she has placed at issue.[1]

### 1. Medical Records and Releases[2]

On February 9, 2024, Defendants requested all documents concerning any hospitals, doctors, or other health professionals whom Plaintiff consulted, or from whom she sought treatment since January 1, 2010, including all documents "that concern any injuries she alleges in the Complaint." For the ensuing two years, Plaintiff contended that there were no responsive documents. However, during her deposition, Netrebko testified that she was hospitalized for two days in March 2022, as a result of "everything that was going on." Netrebko Tr. 298:5-300:8.[3] As a result, Defendants renewed their request for medical records and accompanying authorizations, or, in lieu of such production, they asked Plaintiff to stipulate that she would not be introducing any testimony or medical records as to her alleged hospitalization at summary judgment or trial.

Plaintiff did neither. Instead, she selectively produced a mere 7 pages of medical records showing she was diagnosed with █████████████ in April 2022 and provided no authorizations whatsoever to allow Defendants to obtain the entire universe of pertinent documents. While Plaintiff's counsel later stated that Plaintiff "will seek only garden variety emotional distress damages," she did not agree to stipulate that she would not rely on medical records or testimony in further proceedings.

Plaintiff should not be permitted to curate the evidentiary record by producing only the materials she finds favorable while withholding the rest and denying Defendants the ability to test causation, completeness, or alternative explanations. *See Kelly v. Times/Review Newspapers Corp*. No. 14-CV-2995 (JMA) (SIL), 2016 WL 2901744, at *2 (E.D.N.Y. May 18, 2016) (while "a claim limited to 'garden variety' damages will not generally operate to require production of medical records," the analysis changes once the plaintiff seeks more substantial emotional-distress damages or intends to rely on medical proof); *Sunegova v. Village of Rye Brook,* No. 09-CV-4956 (KMK), 2011 WL 6640424, at *10 (S.D.N.Y. Dec. 22, 2011) (court barred the plaintiff from seeking emotional-injury damages beyond garden-variety distress absent the required medical discovery).

The Court should therefore order Plaintiff either: (a) to produce complete medical records, going back to 2010, together with HIPAA-compliant authorizations for U.S. providers and equivalent

---

[1] This is not the first time Netrebko seeks to evade her discovery obligations by refusing to reveal her true position on Putin and the war. Netrebko has done the same during the course of her deposition, which is the subject of Defendants' pending motion for an adverse inference. *See* Dkt. Nos. 142-144.

[2] This section references material designated by Plaintiff as "Highly Confidential" pursuant to the parties' court-ordered Stipulation. Dkt. Nos. 63 & 78. Accordingly, per Rule VI(b) of Your Honor's Individuals Rules, we are hereby filing: (1) a redacted document in the public docket, and (2) the unredacted document under seal with the proposed redactions highlighted.

[3] Plaintiff's deposition transcript, which has been marked "Confidential", has been produced to Your Honor via email dated December 10, 2025.

173447869.1

Honorable Ona T. Wang
March 18, 2026
Page 3

releases for non-U.S. providers; or (b) to waive reliance on any medical records (including those produced), testimony, or other evidence of hospitalization or medical treatment in further proceedings.

### 2. WhatsApp Communications

Defendants requested that Plaintiff's counsel collect and search Plaintiff's WhatsApp messages for the limited period of February 25, 2022 through February 25, 2024 using five targeted search terms - "Putin," Russia*, Ukr*, "Gelb," and Met* - the purpose of which was to reveal any communications concerning the Met and Gelb, as well as Netrebko's views on Putin and the war. This request is not burdensome, and again, goes to the very heart of this matter. Plaintiff herself alleges that she is "not a political person." SAC ¶ 27. If that is true, the search should yield a modest and manageable universe of documents. Defendants have asked that this search be counsel supervised, since prior discovery has confirmed that Plaintiff has withheld relevant documents from Defendants.[4]

Plaintiff has refused, *in toto*, to perform any such searches claiming that her private WhatsApp messages are irrelevant, in light of Defendants' contention that they had terminated her based on her public views on Putin. That argument fails. Defendants are entitled to discovery relevant to their defenses, not merely to what Defendants subjectively knew at the moment of their decision. Fed.R.Civ.P. 26(b)(1). Plaintiff has alleged that Defendants' reasons for terminating Netrebko were "false" and "pretextual" (SAC ¶ 49); Defendants are entitled to test that contention with contemporaneous evidence of Plaintiff's own views, whether expressed publicly or privately. At issue here is not simply whether Plaintiff said certain words in public statements; it is whether her efforts to distance herself from Putin were sincere, consistent, and sufficient from a legitimate business perspective.

Defendants are not asking for unfettered access to Plaintiff's phone; they seek a counsel-run, term-limited search for a defined period. This is the same kind of ESI process Plaintiff had demanded from Defendants, pursuant to which Defendants searched the WhatsApp and email accounts of two

---

[4] In February 2024 and June 2024, Defendants requested "all documents and/or communications concerning Plaintiff's support for, or disagreement with, Vladimir Putin" and "all photographs in Plaintiff's possession, or in the possession of her agent(s), depicting…Vladimir Putin", respectively. On May 20, 2025, Defendants requested that Plaintiff "produce the WhatsApp photo referenced in documents bates-stamped AN002642-46" – namely a series of emails by Netrebko's manager to Clemens Trautmann from Deutsche Grammophon (Netrebko's recording label), urging him to withhold the subject photo from the press. *See* **Exhibits A** and **B** (RFP No. 7). Plaintiff repeatedly failed to produce responsive documents. Defendants later found out, by mere chance, that the referenced photo was of her toasting to Putin since it was produced in response to a third-party subpoena. **Exhibit C**. Alarmingly, during her deposition, Plaintiff located the WhatsApp exchange with Trautmann (including the photo) within seconds. Netrebko Tr. 201:3-202:10. This confirms that responsive WhatsApp material exists and Plaintiff's self-directed collection was grossly inadequate.

173447869.1

Honorable Ona T. Wang
March 18, 2026
Page 4

custodians – a total of 20,996 documents, exceeding 100,000 pages. Defendants are now asking that Plaintiff undergo the same process that they had demanded from them.

### 3. Instagram Direct Messages

During discovery, Plaintiff produced communications with her manager, Miguel Esteban, whereby he had discouraged her from conveying "hidden messages" through social media which would undermine her recent public statements on Putin and the war. To save face with her Russian fans, it seems that Netrebko was communicating her true feelings as to the invasion of Ukraine and Putin. When asked during her deposition what Esteban meant by "hidden messages", she testified that he was referring to Instagram direct messages. Netrebko Tr. 319:10-22. Defendants therefore asked Plaintiff's counsel to conduct limited searches of Plaintiff's Instagram Direct messages, using the same targeted search terms and date range as those for her WhatsApp messages, but Plaintiff again refused. As discussed above, Plaintiff cannot frame the case around what she publicly said and why she said it (SAC ¶¶ 25, 27-28, 34, 49), while foreclosing discovery into private communications that may explain, qualify, or contradict that public presentation. *See further Forman v. Henkin,* 30 N.Y.3d 656, 665 (2018) (New York Court of Appeals ordered discovery of private social-media content, holding that "the threshold inquiry is not whether the materials sought are private but whether they are reasonably calculated to contain relevant information").

The Court should therefore order Plaintiff's counsel to perform targeted ESI searches on Plaintiff's Instagram direct messages, and to produce all responsive, non-privileged materials.

We thank the Court for its time and consideration.

Respectfully submitted,

*Ariadne Panagopoulou*

Ariadne Panagopoulou of
LEWIS BRISBOIS BISGAARD & SMITH LLP

cc:    All Counsel (via ECF)

173447869.1