THE LAW OFFICES OF

# JULIE R. ULMET

April 21, 2026

***By ECF***
The Honorable Ona T. Wang
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

> Re:   *Anna Netrebko v. Metropolitan Opera Association, Inc., et al.*
>       Case No. 23-cv-6857

Dear Judge Wang,

The undersigned represents Plaintiff Anna Netrebko ("Plaintiff" or "Ms. Netrebko") in the above-referenced matter. Pursuant to the Court's Individual Practice II.b. and Local Rule 37.2, Plaintiff writes to respectfully request a conference with the Court to assist the parties in resolving a discovery dispute concerning the production of a contract between the Metropolitan Opera and the Bolshoi Theater.  The parties conferred about this request in telephone calls on February 24 and March 27, 2026, but were unable to resolve this matter.

Defendants have refused to produce the contract or agreement between the Metropolitan Opera and the Bolshoi reflecting their co-production arrangement, which was discussed in detail during the deposition of Peter Gelb. (Ex. A, Gelb Tr. 94: 20 (confirming existence of written document); 75:22-101:3 (testifying about Met-Bolshoi relationship)). Such documents are highly relevant to Plaintiff's claims. The Met's relationship with the Bolshoi was one of the only relationships, aside from its relationship with Plaintiff, that the Met terminated based on its position about the Russian invasion of Ukraine. (Ex. A, Gelb Tr., 128:19-25). Plaintiff should be permitted to review all pertinent circumstances concerning the Met's relationship with the Bolshoi and the termination thereof in order to compare such evidence to the Met's termination of its relationship with Plaintiff.

The available evidence concerning when and how the Met terminated its relationship with the Bolshoi is limited and inconsistent. Mr. Gelb testified that when Russia invaded Ukraine on February 24, 2022, he immediately had a "concern for The Met [] that I knew that I had to get The Met out of its agreements with the Bolshoi." (Ex. A, Gelb Tr., 119:19). Gelb then testified that he did not consider how the Met's February 27, 2022 Policy (announcing that it would not do business with artists or entities that supported or were supported by Putin) would apply to the Bolshoi because he had "already severed" the relationship with the Bolshoi. (Ex. A, Gelb Tr., 125:7). But in fact, his email to Bolshoi director Vladimir Urin consists of ████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

██████████████████████████████ (Ex. B, Gelb Ex. 7). Furthermore, Gelb further testified that he did not consider how the Policy applied to the Bolshoi because there was "some formal legal notification" the Met had to make to the Bolshoi. But in fact, that formal legal notification was not sent until over three months later, in June 2022. (Ex. C, Basta Tr., 74:10-17; Ex. D, Basta Ex. 9). The Met's 30(b)(6) designee, General Counsel Stephanie Basta, who signed the letter, stated that she was not able to testify about the circumstances of sending this formal letter three-plus months after Gelb emailed Urin because that would have resulted in the disclosure of privileged information. (Ex. C, Basta Tr., 77:5-78:2).

The Met's communications to Urin and the Bolshoi—a Russian government institution funded and controlled by the Putin regime[1]—stands in stark contrast to its disrespectful and disparaging treatment of Plaintiff. In its communications with Urin, the Met was far more respectful and apologetic than in its dealings with Plaintiff. Plaintiff should be permitted to explore whether these differences support an inference of gender discrimination, or whether there were any legitimate business reasons for this disparate treatment. Additionally, Plaintiff should be permitted to review this document given Defendant's limited and inconsistent testimony on the subject.

The contract is also relevant because Plaintiff has alleged, and discovery has shown, that Defendants Metropolitan Opera and Peter Gelb used the termination of Ms. Netrebko as a way of distracting from their own close ties to the Russian government. The Met's arrangement with the Bolshoi was unique among opera companies and had been blessed by President Vladimir Putin himself.[2] (Ex. A, Gelb Tr., 80:20, 92:7).This was only the latest of Mr. Gelb's ties to Russia; discovery has shown that he had a long history of working in the Soviet Union and Russia. The contract with the Bolshoi is central to understanding whether the Met had its own ties to Russia that it needed to hide by taking the most extreme anti-Russia position possible—by publicly and dramatically firing its prominent Russian star. While the public fact that Putin himself approved of the deal with the Bolshoi provides support for this theory, Plaintiff is entitled to learn what the contract itself shows, and what Defendants may be trying to obscure by refusing to produce it. Did Putin himself sign the contract? Did the Met make any promises to the Russian government in the contract? How lucrative was the contract for the Met? Does the contract provide any explanation for why Gelb failed to separate himself from Putin, the Bolshoi, and the Russian state during the years leading up to the invasion, when Russia first invaded Ukraine in 2014, or arrested Russian playwright Kirill Serebrennikov in 2017, or imprisoned Alexei Navalny in 2021—even though

---

[1] Ex. A, Gelb Tr. 81:20-81:17; 86:24-87:2.

[2] "Anna Netrebko Will Star in Three Met-Bolshoi Productions," *N.Y. Times* (Oct. 9, 2017), avail. at https://www.nytimes.com/2017/10/09/arts/music/anna-netrebko-to-star-in-met-bolshoi-productions.html ("Mr. Putin approved the arrangement, which will result in performances from 2019 to 2022.").

2



Gelb, in his own words, viewed the Russian government during that time as becoming "increasingly repressive and autocratic." (Ex. A, Gelb Tr., 99:11, 100:23; 97:24-99:6). Ms. Netrebko should be permitted to examine whether the Bolshoi contract provides any explanation as to why Americans Gelb and the Met failed to "take any steps to distance [themselves] from the Russian government" during these years, but then fired Ms. Netrebko, a Russian national, for allegedly having failed to similarly distance herself from the Russian government during the same time period.

Finally, the partnership between the Met and the Bolshoi is also central to the case given that Ms. Netrebko's involvement was integral to the arrangement. For example, the New York Times' reporting about the announcement or the Met-Bolshoi deal is focused on Ms. Netrebko: headlined, "Anna Netrebko Will Star in Three Met-Bolshoi Productions," and reporting, "The productions will all star the Russian diva Anna Netrebko."[3] Plaintiff has no knowledge whether she herself is mentioned in this contract in any way, and whether other details about her involvement in this arrangement might shed light on the Met's ignominious termination of its relationship with her.

In short, the arrangement between the Met and the Bolshoi is central to the facts and claims in this case. Defendants' witnesses testified at length about it in their depositions. They have provided no reason why they are entitled to shield the contract from production here, and yet they have flat out refused to produce it. Plaintiff respectfully requests that the Court compel Defendants to produce their contract with the Bolshoi, hold a conference on the matter, or permit Plaintiff to fully brief a motion to compel.

---

[3] Sophia Kishkovsky ," Anna Netrebko Will Star in Three Met-Bolshoi Productions," *N.Y. Times* (Oct. 9, 2017), https://www.nytimes.com/2017/10/09/arts/music/anna-netrebko-to-star-in-met-bolshoi-productions.html/

3



Plaintiff thanks the Court for her consideration of this matter.

Respectfully submitted,

*/s/ Julie R. Ulmet*

Julie R. Ulmet
*Counsel for Plaintiff*

cc:     Lloyd B. Chinn, Howard Z. Robbins, Hayden F. Bashinski (Proskauer Rose LLP)
        Elior Shiloh, Ariadne Panagopoulou, William Gosling (Lewis Brisbois Bisgaard & Smith
        LLP); *Counsel for Defendants* (By Email and ECF)
        Kara Gorycki, *Counsel for Plaintiff* (By Email and ECF)

Attachments:
Ex. A (Gelb Deposition Excerpts)
Ex. B (Gelb Ex. 7)
Ex. C (Basta Deposition Excerpts)
Ex. D (Basta Ex. 9)