THE LAW OFFICES OF

# JULIE R. ULMET

March 24, 2026 (revised April 21, 2026)

***By ECF***
The Honorable Ona T. Wang
United States District Court for the Southern District Of New York
500 Pearl Street
New York, NY 10007

> Re:     *Anna Netrebko v. Metropolitan Opera Association, Inc., et al.*
>              Case No. 23-cv-6857

Dear Judge Wang,

The undersigned represents Plaintiff Anna Netrebko. Plaintiff respectfully writes in response to Defendants' March 18, 2026 discovery dispute letter (ECF Doc. No. 172), an unredacted version of which was served on Plaintiff on March 19, 2026. Defendants' requests are without merit and should be rejected.

### 1.  Plaintiff Seeks Only Garden Variety Emotional Distress Damages

Defendants come before the Court to request that the Court to order Plaintiff "to waive reliance on any medical records," but counsel has already represented in writing to Defendants that Plaintiff will seek only garden variety emotional distress damages. (Ex. A, p. 2, Item 4). Under applicable caselaw, this representation should suffice to resolve the matter: once a plaintiff's attorney has represented that she will seek only garden variety emotional distress damages, any motion to compel production of medical records should be denied. *See, e.g, Misas v. N.-Shore Long Island Jewish Health Sys*., No. 14-cv-8787 (ALC) (DJF), 2016 U.S. Dist. LEXIS 96764 (S.D.N.Y. July 25, 2016) (magistrate did not err by basing decision to deny motion to compel production of medical records on plaintiff's representation, rather that stipulation), *Lyon v. Global*, No. 22-CV-9229 (JGLC), 2023 U.S. Dist. LEXIS 183905, at *4 (S.D.N.Y. Oct. 12, 2023) ("Plaintiff will be bound by her representation that she will not testify beyond the garden variety emotional distress that might result from discrimination.")

While counsel has consistently represented, throughout this case, that Plaintiff seeks only garden variety damages, Plaintiff produced certain limited medical records consistent with testimony given by Ms. Netrebko about certain medical treatment. The issue of whether or not that single set of medical records will be admissible at trial is premature at this time. It is appropriate for the Court to consider at this time whether Defendants can compel Plaintiff to produce her full medical records and HIPAA authorizations, and this is not a difficult question. Where a plaintiff seeks only garden variety emotional distress damages, the law is well-settled that it is *not* appropriate to compel production of medical records.[1] *Lyon v. Global*, No. 22-CV-9229 (JGLC), 2023 U.S. Dist. LEXIS 183905, at *4.

---

[1] On a related note, Defendants correctly filed under seal an unredacted version of their letter (ECF Doc. 172) disclosing specific details concerning Plaintiff's health and medical records.



### 2. Requests for Plaintiff's *Private* WhatsApp and Instagram Communications

In their discovery dispute letter, Defendants request that Plaintiff be compelled to collect, search, review, and produce various materials from her private WhatsApp and Instagram communications. Plaintiff has made a good faith effort over the course of two years to comply with Defendant's voluminous RFPs, and it is unclear which Request for Production ("RFP") they deem deficient. This request for a needle in a haystack in which Plaintiff may have uttered something about Ukraine or Putin to anyone in the world—even if entirely unknown to Defendants—is unduly burdensome and lacking proportionality, especially given the irrelevance of such communication to the matters at hand in this case, as explained below.

As a preliminary matter, Defendants' reference to their RFP 7 does not provide an example of a deficient response; Plaintiff made a production in response to this request.[2] Even if Plaintiff had run the suggested search terms through the entirety of her WhatsApp communications, it would not have identified the exchange in question which contained only a photograph and none of these terms.

Defendants' new requests for a wide-ranging review of Plaintiff's social media are irrelevant to the remaining claims in this litigation and come at the eleventh hour in an apparent effort to delay wrapping up fact discovery. More than two years ago, in a letter dated March 6, 2024, Plaintiff first sought to meet and confer with Defendants concerning the parties' anticipated collection and review of ESI. (Ex. C). At no time in the years after that did Defendants seek to meet and confer with Plaintiff about her collection and review protocols. Nearly two years later, in January 2026, Defendants for the *very first time* demanded certain search protocols—years after Plaintiff had undertaken and completed her review and collection of responsive materials.

---

Given Plaintiff's representation that she seeks only garden variety damages and does not seek to provide expert medical testimony, these facts are not the basis of "judicial documents" since they have zero relevance to the proceeding. *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016). Moreover, significant "countervailing factors" weigh against disclosure. *Lugosch v. Pyramid Co.*, 435 F.3d 110, 124 (2d Cir. 2006). As an opera singer, Ms. Netrebko's voice and body are her instruments and public disclosure of her private medical information could jeopardize her professionally. This countervailing factor is especially significant since she has deliberately elected *not* to place her medical history into question in this proceeding by choosing to seek only garden variety emotional distress damages.

[2] Defendants' claim that "Plaintiff repeatedly failed to produce responsive documents," is demonstrably false. (ECF 172, p. 3, n.4). On August 6, 2025, Plaintiff timely produced ~~the requested~~ a document in response to Defendants' Third Request for Production Number 7, which she confirmed to Defendants in an August 26, 2025 letter setting forth the status of her production. (Exhibit B, p.2 ("RFP 7: WhatsApp Photo – Plaintiff produced this document as AN006049.")). On April 20, 2026, for the first time, Defendants informed Plaintiff that the document she had produced did not appear to be the correct document. Even if true, this single example fails to support Defendants' sweeping claim about Plaintiff's alleged failure to comply with her discovery obligations.



This request is not only dilatory but is also not "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Defendants rely on a state court case, *Forman v. Henkin*, 30 N.Y.3d 656, 665 (2018) (applying the discovery rules of the New York CPLR), for the proposition that "the threshold inquiry is not whether the materials sought are private but whether they are reasonably calculated to contain relevant information." Plaintiff does not disagree with this basic premise (to the extent the CPLR's requirements are analogized to the FRCP), but avers that Defendants have failed to demonstrate that their requests will, in fact, yield relevant information. As to Plaintiff's pending discrimination claims, the only claims for which discovery is ongoing[3], the only relevant point is the basis for *Defendants'* beliefs at the time of their decision—not comments made to third parties that were unknown to them. The basis for Defendants' decision to terminate their relationship with Netrebko has been established through depositions. Defendant Met Opera's 30(b)(6) designee testified that the Met relied on Gelb in making this decision. (Ex. D, Basta Tr., 182:15-184:15). Gelb, in turn, testified that he decided to terminate Netrebko because she refused to issue a lengthy public statement meeting his approval, denouncing Putin and including a reference to Putin "breaking international law." (Ex. E, Gelb Tr., 156-24-157:9). Gelb testified that he conditioned Ms. Netrebko's continued employment on issuing such a statement because he viewed her as "publicly aligned with Putin," and explained at length, under oath, the basis for this view. This included public reporting and a single private conversation (curiously, a 2012 conversation about the rock band Pussy Riot, not about Putin). (Ex. E, Gelb Tr., 30:19-62:8).

Since the Met has already established its stated reasons for terminating Netrebko, any new evidence that Defendants acquire through these wide-ranging searches of Plaintiff's private communications would not be relevant to the discrimination claims or defenses. The law is well-settled that an employer's changing or shifting rationale for an employee's termination not only fails to satisfy the employer's burden but can itself provide evidence of pretext and discriminatory motive. *Weiss v. JPMorgan Chase & Co.*, 332 F. App'x 659, 663 (2d Cir. 2009) ("post-hoc explanations for a termination decision may suggest discriminatory motive"); *Carlton v. Mystic Transp. Inc.*, 202 F.3d 129, 137 (2d Cir. 2000) (inconsistency between employer's justifications for plaintiff's dismissal offered in EEOC proceeding and federal court proceeding "raises a genuine issue of material fact with regard to the veracity of this non-discriminatory reason"); *EEOC v. Ethan Allen, Inc.*, 44 F.3d 116, 120 (2d Cir. 1994) (compiling cases and noting that reasonable jury could infer pretext from discrepancies in employer testimony regarding reasons for termination).

Plaintiff further notes that Defendants' inflammatory suggestion as to the meaning of "hidden" is incorrect. The term was used by Plaintiff's manager with a laughing emoji. Plaintiff did not "dodge" the question about someone else's intent and answered forthrightly, "I'm not sure what he has in mind, but I think that maybe what he has in mind is Instagram Direct." (Netrebko Tr. 319:20). Esteban himself explained in his deposition that it was a joke and he was not aware that Plaintiff had ever posted messages that were only comprehensible to her Russian fans or otherwise "hidden" in any manner. (March 20, 2026 deposition transcript forthcoming).

---

[3] Discovery is stayed as to Plaintiff's new defamation claims in her Supplemental Complaint.



       Thus, Plaintiff's private, non-public statements could not have factored into Defendants' decision-making at the time of her termination and are not relevant; and Defendants' request for their production lacks proportionality.

* * *

       Plaintiff would be happy to discuss these issues further in a conference or in writing.

Respectfully submitted,

*/s/ Julie R. Ulmet*

Julie R. Ulmet<br>*Counsel for Plaintiff*

cc:   Lloyd B. Chinn, Howard Z. Robbins, Hayden F. Bashinski (Proskauer Rose LLP)
Elior Shiloh, Ariadne Panagopoulou, William Gosling (Lewis Brisbois Bisgaard & Smith LLP)
*Counsel for Defendants (By ECF)*
Kara Gorycki, *Counsel for Plaintiff (By ECF)*



cc:     Lloyd B. Chinn, Howard Z. Robbins, Hayden F. Bashinski (Proskauer Rose LLP)
        Elior Shiloh, Ariadne Panagopoulou, Daniel Axelrod (Lewis Brisbois Bisgaard & Smith LLP)
        *Counsel for Defendants* (By Email and ECF)
        Kara Gorycki, *Counsel for Plaintiff* (By Email and ECF)